208 N.J. Super. 562 (1986)
506 A.2d 762
JOAN RYNO, INC., PLAINTIFF-APPELLANT,
v.
FIRST NATIONAL BANK OF SOUTH JERSEY, DEFENDANT-RESPONDENT, AND JOHN DOES: JOINTLY, SEVERALLY, AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 24, 1986.
Decided March 10, 1986.
*564 Before Judges MORTON I. GREENBERG, LONG and HAVEY.
Mario J. D'Alfonso, attorney for appellant.
Kirkman, Mulligan, Bell, Armstrong & Serber, attorneys for respondent (David B. Frisch on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, P.J.A.D.
This matter comes on before this court on appeal by plaintiff, Joan Ryno, Inc., from a final judgment in its favor for damages of $1,500 on which prejudgment interest of $985 was allowed. The case involves a breach of a commitment by defendant First National Bank of South Jersey to make a mortgage loan. Even though the case was tried to a jury, the trial judge decided the matter himself as he concluded that on the undisputed evidence plaintiff was entitled to a judgment on liability but its damages were limited to $1,500. Plaintiff, regarding this award as inadequate, brings this appeal. Defendant has not cross-appealed.
The facts developed at the trial are not complicated. In 1977, plaintiff acquired land in Voorhees Township and subdivided it into three lots intending to build two houses, one as a personal residence for its officers, Frank and Joan Ryno, and the other to sell. Frank Ryno (Ryno), who was in charge of plaintiff's construction activities, made inquiry at defendant's Echelon branch concerning the availability of construction financing and was directed to a Mr. Wylerback at defendant's Washington Township branch. Wylerback told him that defendant would issue a commitment for a loan for the personal residence but not for the resale house. This was agreeable to plaintiff and *565 the loan for the personal residence was taken by plaintiff and later closed.
After the initial turn-down of the resale house loan defendant indicated that it would consider a construction loan for that house if plaintiff procured a buyer for it. Consequently plaintiff placed the plans and specifications for this proposed house with a real estate broker to find a purchaser for it. This effort proved fruitful and on March 6, 1978, David Pierson and his wife entered into a contract to buy the house for $69,500. The construction time was important to the Piersons as they wanted to be in the house by July. Plaintiff was attempting to expedite the construction as it did substantial work on the building even before it obtained financing. The Piersons sought financing from defendant which on May 12, 1978 issued a mortgage commitment to them for the purchase. On the same day defendant issued a $50,000 commitment for construction financing at 9 1/2% interest to plaintiff which, however, was not delivered to plaintiff until May 19, 1978. When the commitment was delivered Ryno paid a $50 fee charged for it by defendant and signed an acceptance of it.
Unfortunately a few days after May 19, defendant's employee, David A. Lewis, who had been involved in the matter, called Ryno and told him defendant was cutting back lending and would not be advancing plaintiff the money, a decision made in defendant's Atlantic City office. Lewis, however, referred Ryno to George Emmons, defendant's vice-president in charge of mortgages.
Over the next two days Ryno made several telephone calls to Emmons but was never able to talk to him on the telephone as Emmons did not return his calls. Eventually, between five and ten days after May 19, 1978, Ryno went to Atlantic City and without an appointment walked into Emmons' office. At that time Ryno threatened defendant with litigation if it would not honor the commitment. Nevertheless Emmons confirmed that defendant would not make the loan.
*566 Some days after Ryno's meeting with Emmons, Lewis called Ryno and related that Emmons wanted Lewis to see if something could be worked out. By this time, however, the Piersons had withdrawn from the purchase and had either obtained or asked for a return of their deposit. Subsequently on June 13, 1978 defendant issued to plaintiff a supplementary construction mortgage commitment for $50,000 at the same interest rate as in the earlier commitment. This new commitment was valid for six months but plaintiff refused to accept it as its ability to sell the property was now in question. Plaintiff conceived that it needed a commitment valid for a longer period.
Eventually the situation was largely salvaged. On July 12, 1978, plaintiff obtained a construction mortgage commitment from Atco Bank for $53,000, interest to be 4% above the prime rate, to secure a six-month note renewable for two more six-month periods. Unfortunately, there is no evidence in the record of the prime rate and thus we cannot compare the interest costs of the Atco loan with that under defendant's commitment. The record also is not clear as to the amount of interest plaintiff paid the Atco Bank. However it appears that with this financing, only $40,000 of which was actually drawn, plaintiff was able to complete the property and it did so, eventually reselling it by deed dated June 8, 1979 to Daniel and Lorraine O'Brien for $68,000, $1,500 less than the price under the Pierson contract. This $1,500 differential was the only recovery made by plaintiff in the case.
Notwithstanding the problems between the parties, defendant continued to hold the financing on the Ryno's home. However, on August 1, 1980, more than two years after defendant breached its commitment to plaintiff, the mortgage payment due from plaintiff on the personal residence was not paid, an event which though seemingly unrelated to this case, has generated the principal issue on this appeal. On November 14, 1980, defendant instituted foreclosure proceedings on the residence and on May 27, 1981 secured a final default judgment. This led to a sheriff's sale on July 31, 1981 which was confirmed *567 by the court after plaintiff's objections to it were overruled.
The action now before us was started on April 18, 1983, when plaintiff filed a complaint in the Law Division against defendant seeking compensatory and punitive damages attributable to its refusal to honor the mortgage commitment. Defendant filed an answer disputing liability.[1]
The case came on for jury trial on February 21, 1985. The judge at that time reserved decision on defendant's pretrial motion to dismiss the punitive damage claim. After extensive pretrial argument the judge ruled that the single controversy doctrine barred plaintiff from offering proof of any damages for the loss of the personal residence by foreclosure as that claim should have been presented in the foreclosure action. The case was then tried with the evidence we have already described being developed.
After plaintiff rested, defendant renewed its motion for dismissal of the punitive damage claim and, as the court found the case involved only a breach of contract without egregious conduct or concealment, this motion was granted. Defendant then moved for a partial directed verdict limiting damages to $1,500 and this motion was granted. Defendant then rested without offering evidence. At that point plaintiff moved for a directed verdict which the trial judge granted as he found that defendant unquestionably breached the terms of the mortgage commitment agreement. He thus awarded plaintiff $1,500 in damages, an amount not in dispute. On March 13, 1985 the judge entered an order granting final judgment in favor of plaintiff for $1,500 in damages and prejudgment interest of $985. Plaintiff has appealed from that order.
Plaintiff's first legal contention in its own words is:

*568 The `entire controversy' doctrine, Rule 4:7-1, and Rule 4:27-1(b), do not preclude claims for damages arising from an admitted breach of loan commitment, when such claims were not raised in an unrelated foreclosure action between the same parties.
Clearly plaintiff's very framing of the issue shows that it cannot prevail on this point. It will be noted that plaintiff refers to the two actions as "unrelated," a characterization with much to support it. Defendant made separate commitments to plaintiff on two different though neighboring properties. Defendant did finance one property, apparently without incident. The foreclosure of the mortgage on that property was triggered when plaintiff failed to comply with its repayment obligation. Defendant dishonored its commitment on the other property.
But plaintiff contends, factually, as it must if it is to recover losses for the foreclosure in this case, that the transactions are not unrelated. In its brief it recites:
Due to the Bank's failure to honor its first commitment of May 19, 1978, the Piersons backed out of their agreement to purchase, thus leaving the appellant with no buyer and no funds with which to complete the home.
As a result, the appellant was forced to borrow money elsewhere at a significantly higher interest rate.[2]
The higher rate of interest, coupled with the increased costs of construction, forced the appellant to draw continually from its assets in order to complete the home which was sold in June of 1979 at a purchase price of $68,000.00 ($1,500.00 less than what the Piersons had contracted to pay). Ultimately, the appellant's assets were depleted and it could no longer make the mortgage payments on the Ryno home. Consequently, in November of 1980, the Bank foreclosed on the Ryno home in an action against Joan Ryno, Inc.
Thus plaintiff's problem is apparent: if the transactions are unrelated, as it sets forth in its legal contentions, then the law of damages could not possibly support a finding that losses it suffered by reason of the foreclosure are recoverable in this breach of contract action. On the other hand if they are *569 related, then plaintiff's claim may be barred by the single controversy doctrine, for that doctrine, if applicable, would have compelled plaintiff to have counterclaimed for the breach of the commitment in the foreclosure action or be barred from asserting the claim later. In fact, plaintiff's inconsistent positions show that it is seeking to treat the two transactions as related for the substantive compilation of damages, thus allowing the foreclosure losses to be deemed proximately attributable to the breach of the commitment, while simultaneously considering them unrelated for purposes of the single controversy doctrine, thereby saving the claim for these losses from procedural extinction. We are thus confronted with the choice of determining whether to address first the procedural or substantive question raised by the claim of losses from the foreclosure, it being clear that if the first inquiry results in a barring of the claim for the losses from the foreclosure the second need not be reached. We say this for it is evident that if we decided as a matter of substantive law the foreclosure losses could not be recovered in this action, we would affirm the trial judge's result though not adopt his reasoning. Nevertheless we think it appropriate to assume that plaintiff, unless procedurally barred, substantively could recover damages for the foreclosure losses and thus determine whether the single controversy doctrine is applicable, thereby deciding the case on the same basis as did the trial judge.
In general the single controversy doctrine "requires that a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding." Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 292-293 (App.Div.), certif. den. 75 N.J. 528 (1977). The doctrine may be applied even against a party which defaults in the first proceeding. Mori v. Hartz Mountain Development Corp., 193 N.J. Super. 47, 55-56 (App.Div. 1983). The single *570 controversy doctrine has been codified in R. 4:27-1(b)[3] which requires each party to an action to assert all claims which he may have against any other party insofar as the single controversy doctrine requires. Though we do not so hold as we do not reach the issue, the doctrine may be somewhat limited in foreclosure actions as only "germane" counterclaims may be presented therein. R. 4:7-1.
Without doubt a defendant in a foreclosure action may challenge plaintiff's right to foreclose. See Central Penn Nat'l Bank v. Stonebridge Ltd., 185 N.J. Super. 289, 302 (Ch.Div. 1982). We think it clear that any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure. See Leisure Technology v. Klingbeil, 137 N.J. Super. 353, 356 (App.Div. 1975).
As we have indicated, a counterclaim in a foreclosure must be "germane," a term defined in Leisure Technology v. Klingbeil, supra, 137 N.J. Super. at 356, as meaning the counterclaim must be for a claim arising out of the mortgage foreclosed. While we have difficulty considering the breach of the commitment was germane in the foreclosure action, nevertheless under plaintiff's premise that the losses from the foreclosure are recoverable in this case, it was germane. Further, assuming that substantively plaintiff's damage claim is valid, it cannot be doubted but that if the breach of the commitment gave plaintiff a defense to the foreclosure, then it was germane for that reason as well. Thus we conclude that if we are to accept plaintiff's legal claim that it may obtain substantive damages by reason of the foreclosure, it is barred by the single controversy doctrine from making the recovery. Accordingly the trial judge correctly ruled out these losses.
*571 It is clear to us, however, that in one respect after the judge held the single controversy doctrine applicable he erred and in so doing gave plaintiff a better result than it should have obtained. We are satisfied that if the single controversy doctrine applied then any claim that plaintiff could have otherwise asserted against defendant by reason of the breach of the commitment should have been barred. Instead the judge treated the doctrine as only precluding establishment of damages related to the foreclosure while allowing plaintiff to prove other damages from the breach of the commitment. This narrow application of the single controversy doctrine obviously limited its usefulness. In not precluding the second action which involved a component of what plaintiff itself claimed was a particular controversy, it allowed a result hardly consistent with the purpose of the doctrine to eliminate delay, avoid harassment and wasted time of the parties, avoid clogging of the courts and promote fundamental fairness. See Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, 556 (1981). Our point is that once the doctrine was held applicable, the breach of the commitment and all damages from it were part of a single controversy which included the foreclosure so that plaintiff could not make any claim for breach of the commitment in this later action.
In view of our conclusion that by treating the foreclosure losses as recoverable in this case plaintiff has in effect raised a procedural bar to any recovery at all, we could justifiably go no further on plaintiff's appeal and, as defendant has not cross-appealed, affirm. We will, however, consider the other issues raised by plaintiff because we think that on the merits it is likely we would reach the same result under Hadley v. Baxendale, 9 Ex. 341, 156 Eng.Rep. 145 (1854), and its progeny (see Donovan v. Bachstadt, 91 N.J. 434, 444-445 (1982)) and hold that damages in this action for breach of the commitment could not include the losses from the foreclosure. If we so held the single controversy doctrine would not bar this action.
*572 Plaintiff asserts the trial court erred by limiting evidence of damages from the breach of the loan commitment to proof of the loss of profits on the Pierson sale. Specifically it contends that it should have been awarded punitive damages and compensatory damages for the differential in interest rates of defendant and the Atco bank, for vandalism of the resale house and for being forced out of business.
It is clear, however, that the judge did not exclude evidence to establish these losses. Rather at the end of plaintiff's case he ruled that it could not recover damages for anything other than the $1,500 differential in the sales price because it did not support its claims by evidence. Thus the judge ruled that punitive damages could not be recovered as there was no showing of intentional malice or wrongdoing accompanied by recklessness or an intention to do evil with a willful and wanton disregard of plaintiff's rights. Defendant had simply breached its commitment because it was over-extended. Thus, even if we assume the questionable proposition that under some circumstances punitive damages could be available in this type of contract action, the judge reached the correct result on the proofs. See Nappe v. Anschelewitz, Barr, Ansel & Bonello, 97 N.J. 37, 49 (1984); Ellmex Const. Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195, 207 (App.Div. 1985).
Unquestionably, upon presentation of adequate proofs the added costs of the Atco loan over those that plaintiff would have incurred had defendant not breached its commitment would have been recoverable. Unfortunately for plaintiff, however, the record does not permit any finding of these additional costs. We do not know what was the prime rate, a critical figure in the absence of a statement of the actual rate charged, as Atco charged prime plus 4%. Further, the record did not establish the increased costs to finish or carry the building by reason of the delay in obtaining financing.
The judge ruled out the vandalism claim on the ground that the evidence did not support a finding of the damages from it *573 and on the basis that, as a matter of law, these losses were too remotely connected to defendant's breach to allow their recovery. While we are well aware that, assuming some damage is shown, proof of damages need not be precise, Betenbaugh v. Princeton Hospital, 50 N.J. 390, 393 (1967), here we see no proof at all to support a measure of damages from vandalism. We think it significant that the nature of losses from vandalism to property would permit their establishment by evidence within a reasonable range. Thus we need not consider the judge's alternative ruling that the vandalism damages were too remote to recover. See Donovan v. Bachstadt, supra, 91 N.J. at 444-445.
Finally we see no basis at all in the evidence to conclude that defendant caused plaintiff to go out of business. Further, this type of claim is subject to the same problems under Hadley v. Baxendale, supra, as plaintiff's claim for foreclosure losses. Simply put, by breaching its commitment, defendant did not thereby render itself liable for all future misfortunes suffered by plaintiff.
Affirmed.
NOTES
[1] Defendant also filed a counterclaim but as it has been dismissed we will not describe it.
[2] We have omitted references to the transcript which appellant set forth in its brief supporting certain of these facts. There was no reference to support the statement regarding the "significantly higher interest rate."
[3] The doctrine is also called the "entire" controversy doctrine.