NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0169-13T2

PAUL and BARBARA MILLER,

     Plaintiffs-Appellants,

v.

BANK OF AMERICA HOME LOAN
SERVICING, L.P.,[1]

     Defendant-Respondent.

<div style="border:1px solid">

**APPROVED FOR PUBLICATION**

**March 5, 2015**

**APPELLATE DIVISION**

</div>

Argued December 1, 2014 - Decided March 5, 2015

Before Judges Lihotz, Espinosa and St. John.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1930-11.

Joseph A. Chang argued the cause for appellant (Joseph A. Chang & Associates, LLC, attorneys; Mr. Chang, of counsel and on the briefs; Jeffrey Zajac, on the briefs).

Aaron M. Bender argued the cause for respondent (Reed Smith LLP, attorneys; Mr. Bender, of counsel and on the brief).

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

---

[1]    Bank of America, N.A. is a successor by merger of named defendant Bank of America Home Loan Servicing, L.P.

When defendant Bank of America Home Loan Servicing, L.P. declined to modify the loan obligation of plaintiffs Paul and Barbara Miller under the federal Home Affordable Modification Program (HAMP) and referred the account for commencement of foreclosure, plaintiffs filed this action, alleging breach of contract, violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -195, promissory estoppel, and breach of the covenant of good faith and fair dealing. Following discovery, defendant moved for summary judgment. Upon review, the Law Division judge concluded there was no private cause of action under HAMP and dismissed plaintiffs' complaint with prejudice. Plaintiffs' subsequent motion for reconsideration was denied.

On appeal, plaintiffs challenge the summary judgment dismissal and denial of reconsideration as erroneous, arguing HAMP does not preclude pursuit of valid state law claims arising from the parties' agreement. Plaintiffs also assert the record presented disputed facts requiring jury review. They ask us to vacate summary judgment and reinstate their complaint.

Subsequent to entry of the summary judgment order, this court considered a similar matter. See Arias v. Elite Mortg. Grp., Inc., ___ N.J. Super. ___ (2015). Following our review of the legal issue presented, we, like the panel in Arias, conclude HAMP's preclusion of private causes of action would not prevent

a borrower from pursuing state law claims arising from the breach of an underlying temporary contractual arrangement pending the lender's review under the HAMP guidelines. Id. at 9. Analyzing the record, we affirm the order granting summary judgment because no material factual dispute was presented and the evidence of record failed to support plaintiffs' alleged claims.

## I.

We recite the facts taken from the summary judgment record, as viewed in the light most favorable to plaintiffs, the non-moving parties. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014).

On September 1, 2006, plaintiffs refinanced their residential mortgage debt, obtaining a $540,000 adjustable rate loan from Old Merchants Mortgage, Inc., d/b/a OMMB. When the loan payment increased, plaintiffs stopped making payments.

In 2009, the loan servicer, Countrywide Home Loan Servicing, L.P. (Countrywide), informed plaintiffs they could apply for consideration of a loan modification agreement under HAMP, a program created by the Emergency Economic Stabilization Act, 12 U.S.C.A. §§ 5201-5261 (2008). The federal statute created the Troubled Asset Relief Program (TARP), which authorized the Secretary of Treasury to "implement a plan that

seeks to maximize assistance for homeowners and . . . encourage the servicers of the underlying mortgages . . . to take advantage of . . . available programs to minimize foreclosures." 12 U.S.C.A. § 5219(a)(1). "Pursuant to this authority, in February 2009[,] the Secretary set aside up to $50 billion of TARP funds to induce lenders to refinance mortgages with more favorable interest rates and thereby allow homeowners to avoid foreclosure." Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 556 (7th Cir. 2012).[2] The monies were earmarked for HAMP, which was designed to aid qualified homeowners facing foreclosure. Arias, supra, ___ N.J. Super. at ___ (slip op. at 3-4) (citing Wigod, supra, 673 F.3d at 556-57).

Under HAMP, mortgage loan servicers enter into an agreement with the Secretary of Treasury to perform loan modification and foreclosure prevention services in exchange for financial incentives. Wigod, supra, 673 F.3d at 556. See also Arias, supra, ___ N.J. Super. at ___ n.3 (slip op. at 4 n.3). Borrowers facing mortgage loan default apply for consideration of a loan modification to reduce their monthly mortgage payment and retain possession of their realty. Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 229 (1st Cir. 2013); Wigod, supra, 673

---

[2]    See also Home Affordable Modification Program: Overview, https://www.hmpadmin.com/portal/programs/hamp.jsp (last visited February 9, 2015).

F.3d at 556. The loan servicer evaluates the borrower's application, as defined by guidelines and procedures issued by the Department of Treasury. See id. at 556-57. Pending review of eligibility, a Trial Period Plan (TPP) is struck between the borrower and lender. Id. at 557. "If the borrower complies with the TPP's terms, including making required monthly payments, providing the necessary supporting documentation, and maintaining eligibility, the guidelines state that the servicer should offer the borrower a permanent loan modification." Young, supra, 717 F.3d at 229.

In April 2009, Countrywide sent plaintiffs a TPP, drawn under HAMP. The document's title included the phrase: "Step One of a Two-Step Documentation Process." Further, the document explained: "If I am in compliance with this [TPP] and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement" to amend and supplement the mortgage securing the underlying note.

The three-page, plainly drawn TPP, required plaintiffs to verify their income, submit an affidavit explaining the reasons underlying their mortgage loan default, and file other requested documentation for consideration of their eligibility for a loan modification agreement. Pending Countywide's review, plaintiffs

were to remit three payments of $3,508.17, due on May 1, June 1, and July 1, 2009.  The TPP explained "[t]he Trial Period Payment is an estimate of the payments that will be required under the modified loan terms, which will be finalized in accordance" with the subsequent modification agreement.  Plaintiffs acknowledged "TIME IS OF THE ESSENCE under this Plan" and, further, represented:

> I understand that the [TPP] is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until . . . I meet all of the conditions required for modification . . . . I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this [TPP].

If the trial period payments were not remitted as required by the TPP, or if the financial representations made were no longer accurate, plaintiffs were advised "the Loan Documents will not be modified and this [TPP] will terminate."  On the other hand, if the TPP terms were fulfilled, Countrywide would calculate "the final amounts of unpaid interest and any other delinquent amounts . . . to be added to [the] loan balance" and determine a "new payment amount" under the modified agreement. The TPP would end and the modification agreement would "govern the terms between the Lender and [plaintiffs] for the remaining term of the loan."  During the trial period, Countrywide agreed

6

to suspend foreclosure proceedings, without prejudice to or waiver of its rights.

After executing the TPP, plaintiffs maintain they timely made the first two payments to Countrywide, then sent the third payment to defendant, in accordance with written instructions received after defendant acquired Countrywide.[3]  Defendant's records show plaintiffs' three TPP payments were received on May 14, June 18, and August 18, 2009.

In September, plaintiffs contacted defendant to determine the status of the loan modification and were advised to continue making payments while underwriters were "working on it." Plaintiffs remitted additional payments, totaling $42,096.[4] Plaintiffs continued to seek information regarding the status of a loan modification agreement.  Ultimately, defendant advised them they did not qualify for modification "because [they] did not make all of the required [TPP] payments by the end of the trial period."  More specifically, the payment due July 1 was not received in July, but posted on August 18, 2009.  Defendant

---

[3] The correspondence referred to by plaintiffs was not provided in the record on appeal.

[4]  Defendant recorded payments received from plaintiffs of $3508 (or at times $3508.17) paid from May 2009 to October 2011. In some months during this period, plaintiffs did not remit a payment.

A-0169-13T2

filed a notice of intent to foreclosure and plaintiffs filed this complaint.

Following discovery, defendant moved for summary judgment, which plaintiffs opposed.[5] In a letter opinion, the Law Division judge examined "whether there is a private cause of action under HAMP permitting plaintiff[s] to allege breach of contract, violation of the CFA, promissory estoppel, and violation of the covenant of good faith and fair dealing." Answering the question in the negative, the judge dismissed the claims finding no evidence showing how plaintiffs' assertions were "sufficiently independent of HAMP as to be cognizable." This appeal ensued.

## II.

Appellate review of a trial court's summary judgment determination is well-settled.

> In our de novo review of a trial court's grant or denial of a request for summary judgment, we employ the same standards used by the motion judge under Rule 4:46-2(c). Brickman Landscaping, supra, [219] N.J. [at 406]. First, we determine whether the moving party has demonstrated there were no genuine disputes as to material facts, and then we decide whether the motion judge's application of the law was correct. Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387

---

[5] Defendant additionally filed a motion to strike plaintiffs' expert, which was rendered moot by the grant of summary judgment.

N.J. Super. 224, 230-31 (App. Div.), certif. denied, 189 N.J. 104 (2006). In so doing, we view the evidence in the light most favorable to the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). Factual disputes that are merely "'immaterial or of an insubstantial nature'" do not preclude the entry of summary judgment. Ibid. (quoting Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 75 (1954)). Also, we accord no deference to the motion judge's conclusions on issues of law. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382-83 (2010).

[Manhattan Trailer Park Homeowners Ass'n v. Manhattan Trailer Court & Trailer Sales, Inc., 438 N.J. Super. 185, 193 (App. Div. 2014).]

Plaintiffs argue the judge erroneously concluded their action was filed under HAMP, when in fact it presented state law challenges based on defendant's conduct and breach of the TPP. Plaintiffs do not dispute the legal principle that borrowers have no private cause of action under HAMP. See Wigod, supra, 673 F.3d at 559 n.4; Nelson v. Bank of Am., N.A., 446 Fed. Appx. 158, 159 (11th Cir. 2011) (citing and agreeing with various district courts "that nothing express or implied in HAMP gives borrowers a private right of action"); Speleos v. BAC Home Loans Servicing, L.P., 755 F. Supp. 2d 304, 308 (D. Mass. 2010) ("Neither the HAMP Guidelines nor the Servicer Agreement states any intent to give borrowers a right to enforce a servicer's obligations under the HAMP Guidelines."); In re O'Biso, 462 B.R.

147, 150 (Bankr. D.N.J. 2011) ("[T]here can be no private cause of action (i.e., a breach of contract claim) under HAMP."); Arias, supra, ___ N.J. Super. at ___ (slip op. at 4) (recognizing no private cause of action under HAMP). Rather, plaintiffs maintain they have a right to assert state contractual and other causes of action regarding the failure to comply with terms of the TPP.

Prior unreported opinions by the United States District Court for the District of New Jersey have discussed HAMP's bar of a private cause of action as precluding suits alleging a state contract law theory of liability.[6]

More recent reported opinions from federal courts of appeals have held there is no preemption from filing common law claims related to a contractual agreement arising under a HAMP transaction. In Wigod, the Seventh Circuit concluded "HAMP and its enabling statute do not contain a federal right of action, but neither do they preempt otherwise viable state-law claims." Wigod, supra, 673 F.3d at 555, 576. Also, in Young, the First

---

[6] See, e.g., Stolba v. Wells Fargo & Co., No. 10-cv-6014(WJM)(MF), 2011 U.S. Dist. LEXIS 87355, at *8 (D.N.J. Aug. 8, 2011) (stating "[s]everal courts have already flatly rejected [a] state contract law theory of liability" for purported breaches under a TPP). In Stolba, the court rejected the plaintiff's complaint because "the plain language of the relevant TPP documents makes clear that satisfying the TPP conditions for permanent modification does not guarantee that [the] plaintiff would receive such modification." Id. at *8-9.

Circuit noted "'[t]he standard-form TPP represents to borrowers that they will obtain a permanent modification at the end of the trial period if they comply with the terms of the agreement.'" Young, supra, 717 F.3d at 229 (quoting Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d 172, 177 (D. Mass. 2011)). The court of appeals accepted the premise that a reasonable person would read the TPP as an offer to provide a permanent modification if all conditions were met. Young, supra, 717 F.3d at 234 (citing Wigod, supra, 673 F.3d 562).

Recently, this court undertook review of these issues, addressing the summary judgment dismissal of a complaint filed by the aggrieved plaintiffs determined not qualified for a modification agreement under HAMP following participation in a TPP. Arias, supra, ___ N.J. Super. at ___ (slip op. at 2-3). The panel adopted the view a TPP was

> "a unilateral offer," pursuant to which the bank promised to give plaintiffs a loan modification, if and only if plaintiffs complied fully and timely with their obligations under the TPP, including making all payments timely and providing documentation establishing that the financial representations they made to the bank in applying for the TPP were accurate when made and continued to be accurate.
>
> [Id. at ___ (slip op. at 9-10) (quoting Wigod, supra, 673 F.3d at 562). See also Young, supra, 717 F.3d at 234.]

Nevertheless, the panel found the plaintiffs had not fulfilled their obligations under the TPP, requiring defendant's entitlement to judgment be affirmed. <u>Arias</u>, <u>supra</u>, ___ <u>N.J. Super.</u> at ___ (slip op. at 10-12).

We agree with our Appellate Division colleagues and adopt the methodology outlined in <u>Arias</u>. We accept the holding and conclude HAMP's preclusion of a private right of action does not preempt pursuit of valid state law claims arising between the parties to a TPP. Although a borrower may not sue when a lender denies a loan modification because the borrower failed to meet HAMP's guidelines, which include the lender's evaluation of the borrower's financial stability, <u>id.</u> at ___ (slip op. at 9) (citing <u>Wigod</u>, <u>supra</u>, 673 <u>F.</u>3d at 562; <u>Young</u>, <u>supra</u>, 717 <u>F.</u>3d at 234), we hold borrowers should not be denied the opportunity to assert claims alleging a lender failed to comply with its stated obligations under the TPP. Consequently, when the issuance of a loan modification agreement is explicitly made contingent upon the evaluation and satisfaction of all proscribed conditions precedent within a TPP, including the evaluation and timely satisfaction of all financial disclosures and obligations, the declination of a lender to present a loan modification agreement may be actionable. <u>See id.</u> at ___ (slip op. at 4). In this

12 <span style="float:right">A-0169-13T2</span>

regard, the specific terms of the TPP govern the parties' agreement.[7]

Having determined plaintiffs have the right to pursue valid state law claims, we next examine the record to review plaintiffs' contentions in this matter, arguing the evidence presented material factual disputes regarding performance under the TPP, obviating the entry of summary judgment. Specifically, plaintiffs challenge the reliance on and reliability of defendant's records listing the dates and amounts of all payments received on the loan, including TPP payments received on May 14, June 18 and August 18, 2009. Plaintiffs insist their oral statements rejecting the accuracy of defendant's documents and evincing all payments were remitted on or before the first day of the requisite month, require a jury determination of their TPP performance. We disagree.

Although referencing the existence of various documents supporting their assertions, plaintiffs produced none of them, instead choosing to merely dispute the accuracy of defendant's

---

[7]    Our holding does not suggest the temporary payment under any TPP will necessarily become the adjusted rate in a modification agreement. The TPP here explicitly noted compliance does not mean the loan modification terms will be the same as those in the TPP. Accordingly, when the lender determines the actual loan modification amount, that amount may, depending on the specific facts and circumstances, differ from the sums calculated as payments temporary payments under the TPP.

records and maintaining payments were made on time. A close examination of the summary judgment record, however, reflects plaintiffs have not presented proof of timely payment.

For example, in his deposition, Paul Miller insisted the TPP payments were to be made in June, July and August 2009, and the specific date for payment was the eighteenth of the month. He testified to sending all checks via certified mail and suggested he signed a loan modification agreement. He did not, however, retain a copy of the loan modification agreement or his cancelled checks and never presented any of the certified mail receipts. Barbara Miller's deposition confirmed payments were sent by certified mail, but on the fifth of the month. She also produced neither mail receipts nor cancelled checks.

Plaintiffs' self-serving assertions, unsupported by documentary proof in their dominion and control, "[are] insufficient to create a genuine issue of material fact." Heyert v. Taddese, 431 N.J. Super. 388, 414 (App. Div. 2013). See also Globe Motor Co. v. Igdalev, 436 N.J. Super. 594, 603 (App. Div. 2014). "The very object of the summary judgment procedure . . . is to separate real issues from issues about which there is no serious dispute." Shelcusky v. Garjulio, 172 N.J. 185, 200-01 (2002). In light of the written payment record produced by defendant, plaintiffs' bald assertions of inaccuracy

14

are insufficient to defeat summary judgment. Their claims of timeliness and compliance with the TPP, absent production of written verification, assert a factual dispute which is merely "illusory." Globe Motor, supra, 436 N.J. Super. at 603.

Because many allegations in plaintiffs' complaint are bottomed on their asserted compliance with the TPP, the lack of evidential support does not overcome defendant's proofs to the contrary. Accordingly, plaintiffs have not stated a plausible claim for breach of contract, breach of the covenant of good faith and fair dealing, or promissory estoppel. Summary judgment was properly granted on these issues.

Lastly, plaintiffs assert a violation of the CFA. Plaintiffs maintain defendant "negligently and/or fraudulently handled [their] loan modification application by accepting [thirteen] months of payments under the [TPP]" and then denied the request to modify the loan. We conclude these claims are unfounded.

Under the CFA, a plaintiff who establishes: "(1) an unlawful practice, (2) an 'ascertainable loss,' and (3) 'a causal relationship between the unlawful conduct and the ascertainable loss,' is entitled to legal and/or equitable relief, treble damages, and reasonable attorneys' fees, N.J.S.A. 56:8-19." Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576

(2011) (citation and internal quotation marks omitted). In this regard, unlawful conduct occurs by proof of knowing omissions, affirmative acts, or violations of regulations filed under the CFA. Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994).

N.J.S.A. 56:8-2 provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any . . . real estate . . . is declared to be an unlawful practice . . . .

Further, CFA claims require compliance with Rule 4:5-8(a). Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 112 (App. Div. 2009). Rule 4:5-8(a) provides that "[i]n all allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence, particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable." Accordingly, to establish an act of omission a plaintiff "must show that a defendant [] knowingly [] concealed a material fact [] with the intention that plaintiff rely upon the concealment." Judge v. Blackfin Yacht Corp., 357 N.J. Super. 418, 425 (App. Div.), certif. denied, 176 N.J. 428 (2003). The act must be "'misleading and stand outside the norm of reasonable business

16

practice in that it will victimize the average consumer. . . .'" <u>N.J. Citizen Action v. Schering-Plough Corp.</u>, 367 <u>N.J. Super.</u> 8, 13 (App. Div.) (alteration in original) (quoting <u>Turf Lawnmower Repair, Inc. v. Bergen Record Corp.</u>, 139 <u>N.J.</u> 392, 416 (1995), <u>cert. denied</u>, 516 <u>U.S.</u> 1066, 116 <u>S. Ct.</u> 752, 133 <u>L. Ed.</u> 2d 700 (1996)) (internal quotation marks omitted), <u>certif. denied</u>, 178 <u>N.J.</u> 249 (2003).

Plaintiffs' complaint contains conclusory allegations which parrot the language of the CFA. Further, their deposition testimony offers mere generalizations devoid of specified factual support. At best, we glean plaintiffs' CFA claim to suggest defendant engaged in elusive tactics and ultimately failed to fulfill its promise of delivering a permanent modification of their mortgage loan, after accepting the TPP payments and subsequent payments pending file review. However, the record contains no proof defendant promised to extend a loan modification agreement. Under the terms of the TPP, a loan modification was tied to the fulfillment of specific conditions, including the timely remittance of trial payments. Specifically, the TPP stated:

> I understand that the [TPP] is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a

17

> Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this [TPP].

Defendant's evidence demonstrated the denial of the requested loan modification resulted because plaintiffs did not meet these criteria.

Plaintiffs' CFA claim fails because they fail to identify defendant's unlawful conduct, which they claim encompassed an unconscionable practice or violation of law; detail material misrepresentations they reasonably relied upon resulting in damages; or proffer facts demonstrating a business practice to materially conceal information that ultimately induced them to act.

Following our review of the record, we conclude plaintiffs' unsupported assertions did not create a material dispute requiring determination by the factfinder. See Sickels v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div.) (stating "a court must dismiss [a] complaint if it has failed to articulate a legal basis entitling plaintiff to relief"), certif. denied, 185 N.J. 297 (2005). The evidence of record fails to sustain the claims alleged, warranting summary judgment for defendant.

Any additional issues raised on appeal not specifically addressed were found to lack sufficient merit to warrant discussion in our opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0169-13T2