**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0653-15T3

U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR CITIGROUP
MORTGAGE LOAN TRUST 2006-WFHE3,
ASSET-BACKED PASS-THROUGH
CERTIFICATES, SERIES 2006-WFHE3,

    Plaintiff-Respondent,

v.

SILVANA SOTILLO,


    Defendant-Appellant,

and

MR. SOTILLO HUSBAND OF
SILVANA SOTILLO, and FOXCHASE
TOWNHOME CONDOMINIUM,

    Defendants.

_____

        Argued December 20, 2016 — Decided June 5, 2017

        Before Judges Leone and Vernoia.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Monmouth County, Docket No.
        F-4359-14.

Lyndsay M. Ganz argued the cause for appellant (Law Offices of Lawrence W. Luttrell, attorneys; Ms. Ganz, on the briefs).

Henry F. Reichner (Reed Smith, LLP) argued the cause for respondent.

PER CURIAM

Defendant Silvana Sotillo appeals the September 1, 2015 final judgment of foreclosure was entered in favor of plaintiff, U.S. Bank National Association. Defendant challenges the June 20, 2014 dismissal of her counterclaims, and the August 21, 2015 denial of her motion for reconsideration. We affirm.

I.

Defendant's certification and the loan documentation indicate the following. On July 31, 2006, defendant executed a purchase-money mortgage and an adjustable-rate note for $279,000 from The Loan Tree Corp. The mortgage and note were used to purchase a home in Tinton Falls. The note had an initial interest rate of 8.625%, which would increase on the first change date of August 1, 2008, and thereafter could change up or down by a maximum of 1% every six months, with a cap of 14.625%. On August 11, 2006, the mortgage was assigned to Wells Fargo, N.A.

Late in 2008, defendant contacted Wells Fargo about a loan modification, claiming the adjusted interest rates on her original note had become unaffordable, with the interest rate reaching

11.75% and her monthly payment increased to $2289. Wells Fargo informed her she would have to be delinquent on the loan for more than 30 days before it could be modified. Accordingly, she ceased making payments on the loan. On February 5, 2009, she received a letter from Wells Fargo stating she was denied a repayment agreement because her monthly income was less than her calculated monthly expenses.

On April 10, 2009, Wells Fargo told defendant she was being considered for a loan modification plan. On April 13, 2009, she received a letter from Wells Fargo requesting more financial information and documents, which defendant provided. On April 27, 2009, Wells Fargo sent defendant another letter stating she failed to submit the requested documents. She informed Wells Fargo she previously submitted the required documentation. On October 14, 2009, Wells Fargo approved defendant's first loan modification agreement ("2009 Modification"). Beginning January 1, 2010, her new monthly payment would be $1982.61 with a reduced interest rate of 5.125%. On October 16, 2009, she agreed to the 2009 Modification.

Meanwhile, on September 22, 2009, Wells Fargo sent defendant a letter stating she may be eligible for a trial modification plan under the federal government's Home Affordable Modification Program (HAMP), with an estimated monthly payment of $2145. She

A-0653-15T3

was required to enter a three-month trial payment plan (TPP), wherein she would make three monthly payments of $1185.55. Defendant signed the HAMP TPP agreement on October 26, 2009, and timely made the three required monthly payments of $1185.55. She made a fourth payment as suggested by Wells Fargo over the phone.

On April 14, 2010, Wells Fargo informed defendant her HAMP application was denied because of her failure to make the required trial-period payments. She told Wells Fargo she had in fact made the payments.

On April 27, 2010, Wells Fargo offered defendant a second loan modification agreement ("2010 Modification") which required monthly payments of $2032.05 at an interest rate of 7%. She signed the 2010 Modification on April 30, 2010.

On May 4, 2010, Wells Fargo sent defendant a letter stating she received "an incorrect ineligibility reason" due to a system error. In an attached letter, Wells Fargo told defendant she did not qualify for a modification pursuant to HAMP because her housing expense was not greater than 31% of her gross monthly income.

Defendant continued to make monthly payments on her loan based on the 2010 Modification until she defaulted on the loan on March 1, 2012. Wells Fargo assigned the note and mortgage to plaintiff on May 7, 2012.

On February 5, 2014, plaintiff filed a foreclosure complaint. Defendant filed an answer and asserted affirmative defenses and counterclaims. Plaintiff filed a motion to strike defendant's answer, affirmative defenses, and counterclaims. The trial court heard oral arguments and granted plaintiff's motion on June 20, 2014.

On April 20, 2015, after plaintiff moved for entry of final judgment, defendant moved for reconsideration of the June 20, 2014 order. Reconsideration was denied on August 21, 2015. A final judgment of foreclosure was entered on September 1, 2015.

## II.

Plaintiff's motion to strike defendant's counterclaims did not indicate the Rule on which it was based. The trial court referred to Rule 4:6-2(e), governing dismissal for failure to state a claim. "We review a grant of a motion to dismiss a complaint for failure to state a cause of action de novo, applying the same standard under Rule 4:6-2(e) that governed the motion court." Wreden v. Township of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014). Thus, we are "limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Nostrame v. Santiago, 213 N.J. 109, 127 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). We are required to "'search[] the complaint in depth and with

A-0653-15T3

liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Printing Mart-Morristown, supra, 116 N.J. at 746 (citation omitted). The same standard applies to counterclaims.

However, plaintiff sought dismissal with prejudice and attached certifications and documents, some of which were not referred to in the complaint. Defendant responded with a certification alleging numerous additional facts and attaching many documents not referred to in the pleadings. "If, on a motion to dismiss based on [Rule 4:6-2(e)], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by R. 4:46[.]" R. 4:6-2; see, e.g., Roa v. Roa, 200 N.J. 555, 562 (2010) (applying the summary judgment standard where "the motion was based upon evidence, including certifications, outside of the pleadings"); Cheng Lin Wang v. Allstate Ins. Co., 125 N.J. 2, 9, 14-15 (1991) (applying the summary judgment standard where the response to the motion included a certification and documents). "Because [defendant] presented factual material in opposition to the Rule 4:6-2 dismissal motion and the judge did not exclude it, the motion became one for summary judgment." Albrecht v. Corr. Med. Servs., 422 N.J. Super. 265, 268 (App. Div. 2011). Moreover,

the trial court granted dismissal with prejudice, and later referred to its June 20, 2014 ruling as "an order for summary judgment."

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Summary judgment must be granted if the court determines "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgement or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). We must hew to that standard of review.

### III.

"[T]he only issues in a foreclosure action are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." U.S. Bank Nat. Ass'n v. Curcio, 444 N.J. Super. 94, 112-13 (App. Div. 2016) (quoting Sun NLF Ltd. P'ship v. Sasso, 313 N.J. Super. 546, 550

(App. Div.), certif. denied, 156 N.J. 424 (1998)). A foreclosure action will be deemed uncontested if the responsive pleadings "have been stricken" or do not "contest the validity or priority of the mortgage or lien being foreclosed or create an issue with respect to plaintiff's right to foreclose it." R. 4:64-1(c)(2), (3).

Defendant only challenges the striking of her counterclaims.[1] "Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court." R. 4:64-5. To be germane, "the counterclaim must be for a claim arising out of the mortgage foreclosed." Joan Ryno, Inc. v. First Nat'l Bank of S. Jersey, 208 N.J. Super. 562, 570 (App. Div. 1986). A counterclaim is germane if it contests "the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." Sun NLF, supra, 313 N.J. Super. at 550; see 30A Weinstein, New Jersey Practice: Law of Mortgages § 30.8 at 14 (2d ed. 2000). It is undisputed defendant's counterclaims were germane. See, e.g., Assocs. Home Equity Servs., Inc. v.

---

[1] Defendant asks for the reinstatement of her answer and affirmative defenses as well, but she makes no argument why the court should not have stricken her unsupported affirmative defenses of estoppel, waiver, accord and satisfaction, unclean hands, standing, or violation of the Fair Foreclosure Act, N.J.S.A. 2A:50-53 to -68, and the Truth in Lending Act, 15 U.S.C.A. §§ 1601-1667F. Her defense of equitable recoupment depends on the viability of her counterclaims.

Troup, 343 N.J. Super. 254, 271-73 & n.5 (App. Div. 2001) (finding defendants' statutory claims "germane" because "[a] successful recoupment defense acts to reduce the amount the plaintiff can recover on the claim for the debt when the counterclaim arises from the same transaction").

Instead, the trial court struck defendant's counterclaims because they lacked merit. See, e.g., Borden v. Cadles of Grassy Meadows II, LLC, 412 N.J. Super. 567, 570 (App. Div. 2010). Thus, we examine the merits of defendant's counterclaims in turn.

Defendant's Count One claimed the 2006 issuance of the mortgage loan was the result of predatory lending. Count One, filed in 2014, was untimely under the six-year statute of limitations, and defendant makes no argument otherwise. N.J.S.A. 2A:14-1. We do not need to reach whether there is such a cause of action in New Jersey, or whether it can be brought against plaintiff, which did not originate the loan.

Defendant's Count Two claimed plaintiff breached an implied covenant of good faith and fair dealing from 2009 through 2013 by denying her loan modifications for which she qualified. Again, it was Wells Fargo which dealt with defendant concerning her loan modifications, before plaintiff was assigned the loan in May 2012.

In any event, defendant alleges only one denial of a loan modification, namely the denial of a HAMP modification in 2010.

Wells Fargo's April 14, 2010 denial letter was based on the mistaken belief that she did not make the trial-period payments. However, that mistake was soon corrected on May 4, 2010, when Wells Fargo reported she did not qualify for a HAMP modification because her mortgage expenses did not exceed 31% of her monthly gross income. One of the criteria for HAMP eligibility was that "[t]he borrower has a monthly mortgage payment ratio of greater than 31 percent." U.S. Dept. of Treasury, HAMP Supplemental Directive No. 09-01: Introduction of the Home Affordable Modification Program at 2 (Apr. 6, 2009).[2] "The 'monthly mortgage payment ratio' is the ratio of the borrower's current monthly mortgage payment to the borrower's monthly gross income[.]" Id. at 6. It is undisputed defendant did not meet this HAMP eligibility criterion.

Further, the HAMP application defendant signed stated:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all the conditions requested for modification, [and] (ii) I receive a fully executed copy of a Modification Agreement . . . . I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

---

[2] Available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf.

A-0653-15T3

[(emphasis added)].

Thus, defendant knew the HAMP application was not a binding final agreement, and was contingent on meeting the qualifications for HAMP, which she failed to do. Therefore, Wells Fargo did not commit a breach of the duty of good faith and fair dealing. Arias v. Elite Mortg. Grp., Inc., 439 N.J. Super. 273, 280-81 (App. Div. 2015). "[A] borrower may not sue when a lender denies a loan modification because the borrower failed to meet HAMP's guidelines[.]" Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 549 (App. Div.), certif. denied, 221 N.J. 567 (2015). Thus, Count Two was properly dismissed.

Defendant's Count Three claimed plaintiff breached the 2009 Modification by refusing to follow its terms and by coercing her to apply for and enter into the less favorable 2010 Modification. Again, defendant entered into both agreements with Wells Fargo, and she alleged no misconduct by plaintiff.

In any event, neither defendant's counterclaim nor her certification alleged any term of the 2009 Modification which Wells Fargo failed to follow. Rather, defendant alleged she agreed to seek a HAMP modification, did not qualify for a HAMP modification, and then entered into the 2010 Modification. Our review shows nothing in the 2009 Modification that barred Wells

Fargo from offering, or defendant from accepting, another loan modification opportunity. Thus, we see no breach of contract.

Defendant's Count Four alleged plaintiff's conduct in servicing the mortgage violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20. Count Four incorporated her earlier allegations of coercion and breach of the implied covenant of good faith and fair dealing, but did not otherwise allege any particular unlawful practices. "Because a claim under the CFA is essentially a fraud claim, the rule requires that such claims be pled with specificity to the extent practicable." Hoffman v. Hampshire Labs Inc., 405 N.J. Super. 105, 112 (App. Div. 2009); see R. 4:5—8(a) ("[i]n all allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence, particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable."). As the trial court found, defendant's complaint failed to meet this standard. Miller, supra, 439 N.J. Super. at 553.

However, defendant's submission of her certification, which was not excluded by the trial court, requires us to consider whether summary judgment was appropriate. See R. 4:6-2. In her certification, she claims she was defrauded as follows. Wells Fargo offered her the chance to apply for a HAMP modification after she entered into the 2009 Modification. She made only the

12

low HAMP trial-period payments rather than the higher payments under the 2009 Modification. As a result, she became in arrears under the 2009 Modification. When her HAMP application was denied, Wells Fargo did not tell her she could revive the 2009 Modification by paying the arrearage of about $2800. Instead, it offered her the less favorable 2010 Modification as the only way she could save her home.

Whatever the merit of these allegations, defendant brought Count Four against the wrong party. The CFA provides "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission . . . is declared to be an unlawful practice." N.J.S.A. 56:8-2 (emphasis added). "Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action or assert a counterclaim therefor[.]" N.J.S.A. 56:8-19 (emphasis added). Defendant claimed Wells Fargo was the "person" using unlawful practices, but she brought her counterclaim only against plaintiff.

A-0653-15T3

The CFA defines a "person" to include a "corporation" and "any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof." N.J.S.A. 56:8-1. It does not define it to include an assignee. Thus, plaintiff has no direct liability under the CFA for Wells Fargo's alleged unlawful conduct. Plaintiff is merely the assignee of the mortgage and note.[3]

We have held "an assignee of a [contract] can be held liable under the CFA, for its own unconscionable commercial activities in the subsequent performance of the assigned contract." Jefferson Loan Co., Inc. v. Session, 397 N.J. Super. 520, 533 (App. Div. 2008). We made clear "[o]ur holding is limited to an assignee's own unconscionable commercial practices . . . , not an assignee's derivative liability for the actions of the assignor of the [contract]." Id. at 538.[4]

---

[3] Wells Fargo assigned plaintiff the mortgage on defendant's property, "together with the note(s) and obligations therein described and the money due and to become due thereon, with interest, and all rights accrued or to accrue under such Mortgage."

[4] See Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 578 (2011) (noting Jefferson held the CFA applied "to the unconscionable loan-collection activities of an assignee"); Psensky v. Am. Honda Fin. Corp., 378 N.J. Super. 221, 231 (App. Div. 2005) (indicating a plaintiff can bring a CFA claim "where the assignee's fraud was active and direct").

A-0653-15T3

We thus examine whether defendant can claim plaintiff has derivative liability for the actions of Wells Fargo. "Generally speaking, the assignee at common law was subject to the equities and defenses which the account debtor could have asserted against the assignor prior to the assignment," including set-offs and discounts. James Talcott, Inc. v. H. Corenzwit & Co., 76 N.J. 305, 310 (1978). That rule remains in place for non-negotiable instruments. N.J.S.A. 12A:9-404(a) ("the rights of an assignee are subject to . . . any defense or claim in recoupment arising from the transaction that gave rise to the contract; and [] any other defense or claim of the account debtor against the assignor"); N.J.S.A. 46:9-9 ("in any [foreclosure] action by the assignee [of a mortgage], there shall be allowed all just set-offs and other defenses against the assignor that would have been allowed in any action brought by the assignor"); see Gotlib v. Gotlib, 399 N.J. Super. 295, 313 (App. Div. 2008).

However, "'the assignee does not thereby, without more, assume the liabilities of the assignor.'" James Talcott, Inc., supra, 76 N.J. at 310 (quoting Falkenstern v. Herman Kussy Co., 137 N.J.L. 200, 202 (E. & A. 1948) (citation omitted)). "The general rule" is that "affirmative claims against an assignee based on the assignor's conduct are prohibited." 29 Weinstein, New Jersey Practice: Law of Mortgages § 11.4 at 245 (2d ed. Supp.

2016-17). "[R]ecovery and judgment on a counterclaim or setoff against an assignee, where based on a demand against the assignor, cannot be affirmative; it can be defensive only." Pargman v. Maguth, 2 N.J. Super. 33, 38 (App. Div. 1949).

Moreover, even defensive use of such a counterclaim may be barred if the note and mortgage were negotiable instruments. Carnegie Bank v. Shalleck, 256 N.J. Super. 23, 44 (App. Div. 1992) ("N.J.S.A. 46:9-9 was always intended to be limited to non-negotiable instruments, such as a mortgage bond, rather than negotiable instruments, such as a promissory note."). Here, the note is a negotiable instrument under New Jersey's Uniform Commercial Code (UCC), N.J.S.A. 12A:1-101 to 12A:10-106. The note is "an unconditional promise or order to pay a fixed amount of money, with or without interest," "is payable on demand or at a definite time" to the "order" of the lender, and "does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money." N.J.S.A. 12A:3-104(a). The same is true of the loan modifications.

We follow "the great weight of authority in other jurisdictions" that a mortgage on such a note is negotiable:

> When a mortgage secures a negotiable instrument, . . . a transfer of the negotiable instrument to a holder in due course to whom

the mortgage is also assigned will enable the assignee to enforce the mortgage (as well as the negotiable instrument) according to its terms, free and clear of any personal defenses the mortgagor may have against the assignor. This results from the view that the mortgage is mere "incident" or "accessory" to the debt and when the debt is embodied in a negotiable instrument the quality of negotiability is necessarily imparted to the accompanying mortgage.

[Carnegie Bank, supra, 256 N.J. Super. at 45 (quoting 29 N.J. Practice, Law of Mortgages, § 124, at 567-68 (Roger A. Cunningham & Saul Tischler) (1st ed. 1975)).]

The UCC confirms a holder in due course takes such a negotiable instrument free of personal defenses. N.J.S.A. 12A:3-305(b) provides:

The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in paragraph (1) of subsection a. of this section, but is not subject to defenses of the obligor stated in paragraph (2) of subsection a. of this section or claims in recoupment stated in paragraph (3) of subsection a. of this section against a person other than the holder.

N.J.S.A. 12A:3-305(a) in turn provides such an obligor may assert real defenses, namely

(1) a defense of the obligor based on infancy of the obligor to the extent it is a defense to a simple contract, duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, fraud that induced the obligor to sign the instrument with

> neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or discharge of the obligor in insolvency proceedings[,]

but may not assert personal defenses or recoupment:

> (2) a defense of the obligor stated in another section of this chapter or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract; [or]
>
> (3) a claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument[.]
>
> [Ibid. (emphasis added); see N.J. Mortg. & Inv. Corp. v. Berenyi, 140 N.J. Super. 406, 408-09 (App. Div. 1976) ("Real defenses are available against even a holder in due course of a negotiable instrument; personal defenses are not available against such a holder.").

Fraud in the inducement is a personal defense. "Mere 'fraud in the inducement' or 'inception' cannot be asserted against a holder in due course, only 'fraud in the factum' — fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms." 29 Weinstein, New Jersey Practice: Law of Mortgages § 11.5 at 777 (2d ed. 2001) (footnote omitted); see N.J. Mortg. & Inv. Co. v. Dorsey, 33 N.J. 448, 449-51 (1960) (holding "fraud in the factum" is a defense against a holder in due course); see also Resolution Tr. Corp. v. Assoc. Gulf Contractors, Inc.,

263 <u>N.J. Super.</u> 332, 347-48 (App. Div.) (ruling a federal holder in due course "takes it free of all 'personal' defenses," including fraud in the inducement), <u>certif. denied</u>, 134 <u>N.J.</u> 480 (1993).

Defendant's Count Four claims fraud in the inducement. She does not dispute she signed the 2010 Modification knowing it was a loan modification and knowing its terms. Rather, she claims Wells Fargo fraudulently induced her to sign the 2010 Modification by not telling her she could resurrect the more favorable 2009 Modification by paying arrears. "But if plaintiff is a holder in due course, <u>N.J.S.A.</u> 12A:3-305[(a)](2) would preclude [defendant] from asserting h[er] personal defense of fraud during the inception of the [2010 Modification]." <u>Carnegie Bank</u>, <u>supra</u>, 256 <u>N.J. Super.</u> at 32.

The record indicates plaintiff is a holder in due course. Plaintiff took assignment of the note and mortgage "for value." <u>N.J.S.A.</u> 12A:3-302(a)(2). There is no claim plaintiff was "engaged in [the] fraud or illegality affecting the instrument." <u>N.J.S.A.</u> 12A:3-203(b). Wells Fargo's alleged fraud occurred in 2010, but plaintiff did not receive the assignment until 2012. It is undisputed plaintiff took the assignment "in good faith." <u>N.J.S.A.</u> 12A:3-302(a)(2). Nothing on the face of the mortgage, note, or loan modifications gave plaintiff "notice" that any fraud had occurred, or that defendant had the "defense or claim in

19 <span style="float:right">A-0653-15T3</span>

recoupment" she now raises. <u>Ibid.</u> Defendant does not claim plaintiff was "aware of those defenses" at the time of assignment. <u>Cf.</u> <u>Wells Fargo Bank, N.A. v. Ford</u>, 418 <u>N.J. Super.</u> 592, 600 (App. Div. 2011). "'Bad faith, i.e., fraud, not merely suspicious circumstances, must be brought home to a holder for value whose rights accrued before maturity in order to defeat his recovery on a negotiable note upon the ground of fraud in its inception or between the parties to it.'" <u>Breslin v. N.J. Inv'rs, Inc.</u>, 70 <u>N.J.</u> 466, 473 (1976) (citations omitted).

Thus, defendant could not assert her Count Four claim of fraud in the inducement by Wells Fargo against plaintiff because it was a holder in due course. "'The basic philosophy of the holder in due course status is to encourage free negotiability of commercial paper by removing certain anxieties of one who takes the paper as an innocent purchaser knowing no reason why the paper is not as sound as its face would indicate.'" <u>Breslin</u>, <u>supra</u>, 70 <u>N.J.</u> at 472 (citation omitted). That philosophy applies here.

Defendant's CFA claim is based on the alleged actions of Wells Fargo. Wells Fargo is not a party to this action and we express no opinion to whether or not it would have any liability to defendant if she brought a CFA claim against it. We rule only that Count Four, like defendant's other counterclaims, was properly dismissed with prejudice as to plaintiff.

20

For the same reasons, the trial court did not abuse its discretion in denying reconsideration. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION