120 N.J. Super. 155 (1972)
293 A.2d 445
THE BOARD OF EDUCATION OF PASSAIC IN THE COUNTY OF PASSAIC, DAVID HAMMER AND ROBERT HOPKINS, INDIVIDUALLY, AND AS TAXPAYERS, AND BOARD OF EDUCATION OF THE CITY OF PATERSON IN THE COUNTY OF PASSAIC, INTERVENOR, PLAINTIFFS
v.
BOARD OF EDUCATION OF TOWNSHIP OF WAYNE, BOARD OF CHOSEN FREEHOLDERS OF PASSAIC COUNTY, AND BOARD OF TRUSTEES OF PASSAIC COUNTY CHILDREN'S SHELTER, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 6, 1972.
*157 Mr. Louis Marton, Jr. for plaintiffs Board of Education of Passaic, David Hammer and Robert Hopkins (Mr. Robert P. Swartz on the brief).
Mr. Robert P. Swartz for intervener Board of Education of the City of Paterson.
Mr. Herman W. Steinberg for defendants Board of Chosen Freeholders of Passaic County and Board of Trustees of Passaic County Children's Shelter (Mr. Anthony J. Orrico on the brief).
Mr. Sylvan Rothenberg for defendant Board of Education of Township of Wayne.
*158 ROSENBERG, J.C.C.
The matters before this court are cross-motions by plaintiffs and defendants for summary judgment. The issues raised are of novel impression to the courts of New Jersey.
In December 1954 the Passaic County Board of Chosen Freeholders adopted a resolution creating a children's shelter in accordance with N.J.S.A. 9:12A-1 and further provided for the appointment of a board of Trustees in accordance with the statute. The shelter was constructed in Wayne and intended as a temporary facility for delinquent and abandoned or neglected children.
No formal educational program was conducted at the shelter prior to September 1968. In 1968 both the board of trustees of the Passaic County Children's Shelter and the board of freeholders adopted resolutions providing for an educational program to be instituted at the shelter under the auspices of the Wayne Board of Education. In addition it was provided that the cost of the educational program would be supported on a pro rata basis among the various school districts which had pupils in attendance at the shelter.
The tuition charges for the shelter for the years 1968-69, 1969-70 and 1970-71 totaled $36,256, $45,800 and $37,240, respectively. The decision to apportion said costs on a pro rata basis resulted in assessments against Paterson in the amounts of $26,574, $31,056 and $23,328, and against Passaic in the amounts of $6,901, $10,712 and $8,392 for the same periods. Thus, although there are 14 other municipalities in Passaic County, the school districts of Passaic and Paterson have been assessed with approximately 90% of the cost of the shelter's educational program.
At first the plaintiff boards of education objected to the charges submitted for the program and resisted payment. After it was threatened to discontinue the education classes, both boards decided to make payments under protest.
The dispute was brought before the court by the instant action in lieu of prerogative writs, commenced by the Board of Education of the City of Passaic and by David Hammer *159 and Robert Hopkins, individually. At the pre-trial the Board of Education of the City of Paterson was granted leave to intervene as a party plaintiff. The complaint alleges that the educational program established at the Passaic County Children's Shelter is in violation of existing laws and that monies paid by the plaintiff boards of education pursuant to such program were paid by mistake. Consequently, plaintiff boards of education seek an accounting, restitution of the monies previously paid, and a restraint upon defendants from collecting additional monies from them for the educational program at the county shelter. Additionally, the individual plaintiffs seek this court to adjudge that the Passaic County Board of Chosen Freeholders, or, in the alternative the Board of Education of the Township of Wayne, is required to provide free education for the children housed at the Passaic County Children's Shelter.
Under Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74 (1954), summary judgment may be rendered when the pleadings, depositions and admissions on file, together with affidavits submitted on the motion, show clearly that there is no genuine issue of material fact requiring disposition at a trial. In the instant case there is no factual dispute and judgment may be rendered on the applicable law.
Plaintiffs contend that N.J.S.A. 9:12A-1 places the responsibility of funding the educational program conducted at the county shelter on the Passaic County Board of Chosen Freeholders. This court is in full agreement with such a contention.
N.J.S.A. 9:12A-1, in authorizing the establishment of a children's shelter, states in part: "* * * the board of chosen freeholders shall provide the funds for carrying on the shelter and for the betterments, improvements and replacements that may be required, in the annual appropriations, but money for new buildings and the equipment thereof and other permanent improvements may be raised by bond issue." Thus the statutory language itself has established that the *160 funds for the operation of the shelter, which in this court's opinion encompasses the educational program conducted therein, are to be provided by the board of chosen freeholders.
Plaintiff's contention is further supported by a comparison of N.J.S.A. 9:12A-1 with N.J.S.A. 18A:54-1 et seq., dealing with county vocational schools, and N.J.S.A. 18A:47-1 et seq., dealing with schools for dependent and delinquent children. In both of the last-mentioned statutes, provision is specifically authorized for the receiving school district to collect from the sending school district a sum for the tuition and maintenance of children attending classes within the receiving school district. However, in enacting N.J.S.A. 9:12A-1 the Legislature failed to provide for the payment of tuition for educational programs at county shelters to be made on a pro rata basis by sending school districts. Had the Legislature intended for the sending school districts to be responsible for the tuition costs of pupils at the shelter, it would have so provided as it did with vocational education, N.J.S.A. 18A:54-1 et seq., and detention schools, N.J.S.A. 18A:47-1 et seq. Such silence in failing to so provide is interpreted by this court to mean that the Legislature intended that a county-organized educational program operated at a county facility should be funded by the county through the board of freeholders. Such an interpretation is consistent with the literal meaning of N.J.S.A. 9:12A-1.
Defendants argue that the cost of educating the children at the county shelter should be borne on a pro rata basis by the sending school districts. Defendants have presented two arguments to support their contentions: (1) shelter children are nonresidents of Wayne school district and as such their tuition costs must be reimbursed under N.J.S.A. 18A:38-1 et seq., and (2) the educational program at the shelter consists of a special class under either N.J.S.A. 18A:46-1 et seq. or N.J.S.A. 18A:47-1 et seq.
Defendants' first argument is based on N.J.S.A. 18A:38-3, which states that "Any person not resident in a *161 school district, if eligible except for residence, may be admitted to the schools of the district with the consent of the board of education upon such terms, and with or without payment of tuition, as the board may prescribe." Defendants further contend that the payment of tuition expressed in N.J.S.A. 18A:38-3 is further implemented by N.J.S.A. 18A:3A-19, which provides in part: "Whenever the pupils of any school district are attending public school in another district * * * the board of education of the receiving district shall determine a tuition rate to be paid by the board of education of the sending district."
This court is not satisfied that N.J.S.A. 18A:38-1 et seq. is applicable to the case at bar for two reasons. The first is that the defendants have not demonstrated that the abandoned or neglected children housed at the shelter have any other residence than that of the shelter. Secondly, the educational program at the shelter does not constitute a "public school of the receiving district." Although the program is conducted under the auspices of the Wayne School board, it cannot be said to be a school of just one district since it is controlled by the county and has been funded by various municipalities within the county. Due to these factors, this court holds that the educational program at the shelter does not constitute a public school of the Wayne School District and as such the sending school districts are under no obligation to pay tuition for the children attending the program at the shelter.
Defendants' second argument is that the educational program at the shelter consists of special classes under either N.J.S.A. 18A:46-1 et seq. or N.J.S.A. 18A:47-1 et seq., both of which provide that the sending school district should make tuition payments to the receiving school districts.
Defendants readily admit, however, that N.J.S.A. 18A:47-1 et seq., which is restricted to schools for dependent and delinquent children, is not applicable to all the children at the shelter. This is due to the fact that the abandoned or *162 neglected children housed at the shelter have not been adjudged juvenile offenders. Thus, since N.J.S.A. 18A:47-1 et seq. does not apply to all of the children at the shelter, this court is of the opinion that no part of the educational program conducted at the shelter can fall within the statute merely because some of the pupils would qualify for a school for dependent and delinquent children.
The same reasoning is applicable to defeat defendants' contention that N.J.S.A. 18A:46-1 et seq., which deals with schools for handicapped children, is controlling. In attempting to stretch the coverage of this statute, the defendants contend that the children confined at the shelter fall within the definition of a handicapped child as set forth in N.J.S.A. 18A:46-1 in that all shelter children are "socially maladjusted." Such a conclusion cannot be accepted. To say that a child is "socially maladjusted" merely because the child was abandoned or neglected by his or her parents is in fact repulsive to this court. Although abandonment or neglect could cause social maladjustment in a child, this court thinks it highly unfair to conclude that all such children are "socially maladjusted." Thus, since it has not been shown that N.J.S.A. 18A:46-1 et seq. is applicable to all the children housed at the shelter, this court is again of the opinion that no part of the educational program conducted at the shelter can fall within the statute merely because some of the group members would qualify for a school for handicapped children.
In sum, it is this court's opinion that there is no statutory direction by which the Passaic County Board of Chosen Freeholders is authorized to seek tuition payments from the plaintiff school boards.
Having decided that the plaintiff school boards were under no legal obligation to pay the tuition costs which were assessed against them, this court must now concern itself with the issue of whether the plaintiffs may recover the monies previously paid. Such a question seems to be one of first impression in this jurisdiction.
*163 Plaintiffs argue for restitution on the grounds that the tuition assessments were paid under mistake of law. The general rule is that such payments made by municipal corporations or agents thereof under mistake of law are recoverable.
In his treatise on municipal corporations, McQuillin states that "although the authorities are by no means uniform, the prevailing view seems to be that payments made by a municipality under mistake of law may be recovered." 17 McQuillin, Municipal Corporations (3d ed. 1968), § 49.62 at 317. In agreement is Corpus Juris Secundum which provides:
Although there are decisions to the contrary, the general rule is that payments made by public officers under mistake of law may be recovered back, and that action may be maintained to recover public funds paid without authority, although paid under a mistake of law, regardless of the good faith of the payee.
Similarly, it is generally held that payments made by municipal subdivisions of the state under mistake of law may be recovered back * * *. [70 C.J.S. Payment § 156 at 365 (1951)]
In dealing with the issue of whether the government could recover erroneous refunds, the court in United States v. Hart, 12 F. Supp. 596, 597 (E.D. Pa. 1935), aff'd 90 F.2d 987 (3 Cir.1937), held that "it is well settled that in case of the government, states, and even municipalities, money paid by mistake may be recovered." So also, the case of Powell v. Lawlor, 197 Misc. 521, 95 N.Y.S.2d 193, 194-195 (Sup. Ct. 1950), held that "payment of public funds or trust funds by agents of municipalities is not subject to the general rule that money paid under a mistake of law may not be recovered back."
The issue not having been previously decided in this jurisdiction, this court will adopt the majority view and hold that municipalities may recover payments made under mistake of law. The reasoning behind such a decision is that *164 this court does not feel that a municipality or subdivision thereof, as the instrument of the people, should be bound by a misinterpretation of the law by the authorities in charge.
Applying the holding of law above to the facts of the case, this court is of the further opinion that the tuition payments were made under a mistake of law. As defined in the case of Flammia v. Maller, 66 N.J. Super. 440, 459 (App. Div. 1961), a mistake of law occurs where a person is truly acquainted with the existence or nonexistence of facts, but is ignorant of or comes to an erroneous conclusion as to their legal effect. In the case at bar the plaintiff school boards paid the tuition payments under protest, but such payments certainly would not have been made had plaintiffs realized the invalidity of the assessments.
Having determined that municipalities may recover payments made under mistake of law and that the tuition payments in the instant case were so made, it is hereby ordered that an accounting be made, that all previously paid tuition assessments be returned, and that the Passaic County Board of Chosen Freeholders is to provide free education to the children housed at the county shelter.