145 A.3d 695

JUAN C. DELACRUZ AND MADHARSHINI DELACRUZ, PLAIN-
TIFFS v. MICHAEL A. ALFIERI; MICHAEL ASHLEY; GE MON-
EY BANK; LEND AMERICA; ARLENE LIEBERMAN; RAUL
LIN; LITTON LOAN SERVICING; LYNX ASSET SERVICES,
LLC; MARIX SERVICING; WMC MORTGAGE CORPORATION;
JOHN DOES 1-X, DEFENDANTS.

Superior Court of New Jersey
Law Division-Civil Part
Bergen County

Decided: November 18, 2015

2

4

*John P. Fazzio, III*, attorney for plaintiffs (*Fazzio Law Offices*, attorneys).

*Joshua G. Curtis*, attorney for defendant Lynx Asset Services, LLC.

*David A. Scheffel*, attorney for defendants GE Money Bank and WMC Mortgage, LLC, of the New York bar, admitted pro hac vice (*Dorsey & Witney, LLP*, attorneys).

MARY F. THURBER, J.S.C.

This matter came before the court by way of three motions for summary judgment filed separately on behalf of four defendants, all asserting plaintiffs' claims are barred by one or more preclusionary doctrines, i.e., the entire controversy doctrine, res judica-

ta, or collateral estoppel. Defendant Litton Loan Servicing withdrew its motion after oral argument.

The claims arise out of a mortgage loan transaction in 2007, which went into default and as to which defendant Lynx Asset Services ("Lynx"), as assignee of the mortgage and loan, obtained a final judgment of foreclosure on October 24, 2012. For the reasons set forth below, the motion of defendant Lynx is granted, and the motion of defendants GE Money Bank (GEMB) and WMC Mortgage LLC (WMC) (collectively, GE/WMC) is granted.

## BACKGROUND

In 2007, plaintiffs were the owners of a home at 53 Ralph Street in Bergenfield, New Jersey. In February of that year, Juan Delacruz borrowed $57 0,000 from GEMB in connection with a refinancing. Defendant WMC Mortgage Corporation is identified as a corporate affiliate of GEMB. Both plaintiffs signed a mortgage document, mortgaging their Ralph Street property to Mortgage Electronic Registration Systems (MERS) as nominee for the lender. Defendant Litton was the initial loan servicer for the lender. Litton was succeeded by Marix Servicing (a defendant since dismissed from the case), who serviced the loan until Lynx acquired it. Lynx acquired the note and mortgage by assignment in or about August 2008.[1]

Lynx filed a foreclosure action in April 2011, alleging the Delacruzes had failed to make payments due under the note and were in default. The Delacruzes filed a contesting answer to the complaint, listing fifteen affirmative defenses and asserting a counterclaim alleging that Lynx or its predecessor had violated the Federal Truth in Lending Act ("TILA") by, inter alia, underdisclosing the actual finance charges and by not properly advising the Delacruzes of their right to cancel the loan. The affirmative defenses asserted: fraud by Lynx or third parties (seventh affir-

---

[1] Although plaintiffs argue there is a disputed fact about the validity of the assignment, that issue was determined in the foreclosure proceeding when the Court accepted and enforced Lynx's right to foreclose.

mative defense); that the contract was procedurally and substantively unconscionable and unenforceable (eighth affirmative defense); that Lynx or Lynx's agents fraudulently induced the Delacruzes to enter into the contract, in part by under-disclosure of the finance charge and the annual percentage rate (ninth affirmative defense); that the mortgage and/or note were fraudulently created and therefore unenforceable (thirteenth affirmative defense); and that Lynx "stands in the shoes" of the original lender, who obtained the note and mortgage under false pretenses or fraudulent, tortious, or criminal acts (fifteenth affirmative defenses). The Delacruzes did not at any time while the foreclosure matter was pending seek to amend their answer or to join other parties to the action through a third-party complaint. Plaintiffs admit that they were aware of the facts underlying their current complaint at the time the foreclosure action was filed and pending. Plaintiffs were aware of the entire controversy doctrine, as they themselves raised it as their fifth affirmative defense.

Lynx moved for summary judgment in the foreclosure action, and summary judgment was granted on March 2, 2012. Final judgment of foreclosure was entered on October 24, 2012.

Plaintiffs filed their complaint in this matter on February 8, 2013, naming twenty-three defendants and John Does I–X. They filed an amended complaint on November 6, 2013, reducing the number of named defendants to nine. The amended complaint pleads breach of contract, Consumer Fraud Act violations, and common law fraud. The main factual thrust of the complaint is that plaintiffs were presented at closing with loan documents that differed from the terms to which they had agreed, that they thereafter rescinded and/or modified the loan, and that defendants failed to honor the modifications/rescission.

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on

file, together with the affidavits, if any, show that there is no genuine issue of material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *R.* 4:46-2(c). The court is required to view all competent evidential materials presented in the light most favorable to the non-moving party (plaintiffs in this case), and to grant summary judgment only if those materials are not sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).

Thus, the trial court is charged first with the responsibility of assessing whether there is any genuine issue of material fact and, if there is none, then, second, determining whether defendant is entitled to entry of judgment as a matter of law. *Sanchez v. Indep. Bus. Co., Inc.*, 358 *N.J.Super.* 74, 80, 817 *A.*2d 318 (App.Div.2003).

■ Questions of law are properly resolved on summary judgment and no trial or fact-finding is needed. Interpretation of insurance contracts (*Adron, Inc. v. Home Ins. Co.*, 292 *N.J.Super.* 463, 473, 679 *A.*2d 160 (App.Div.1996)) and existence of a duty of care (*Carvalho v. Toll Bros and Developers*, 143 *N.J.* 565, 675 *A.*2d 209 (1996)) are examples of issues of law, not fact, for which summary judgment is appropriate. Similarly, questions of statutory interpretation are questions of law, and therefore, ones for whose resolution summary judgment is an appropriate and favored tool. *Euster v. Eagle Downs Racing Ass'n*, 677 *F.*2d 992 (3d Cir.), *cert. denied*, 459 *U.S.* 1022, 103 *S.Ct.* 388, 74 *L.Ed.*2d 519 (1982); *Bd. of Educ. of Passaic v. Bd. of Educ. of Wayne*, 120 *N.J.Super.* 155, 293 *A.*2d 445 (Law Div.1972). Whether claims are barred by a preclusionary doctrine is a question of law, which may be resolved by summary judgment unless there are bona fide factual disputes about the elements necessary for application of the doctrine(s).

■ Although the standard for summary judgment in our state had long been that set forth in the seminal New Jersey decision *Judson v. Peoples Bank & Trust Co. of Westfield*, 17 *N.J.* 67, 110

A.2d 24 (1954), our Supreme Court made clear in *Brill* the active role trial courts should take in considering such motions. The trial court must scrutinize the opposition to summary judgment and deny judgment only if the opponent can demonstrate more than the suggestion of a factual dispute. *See Brill, supra,* 142 *N.J.* at 539–540, 666 *A.*2d 146. The burden of opponents in response to a summary judgment motion is to show the court: (1) a bona fide dispute, over a (2) material fact, and (3) that enough evidence exists in favor of that position that a rational factfinder could resolve that dispute in their favor by the burden of proof that will be applied at trial. *See id.* at 540, 666 *A.*2d 146.

The Supreme Court made clear in *Brill* that it was adopting the standards established by the 1986 trilogy of United States Supreme Court cases, *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 *U.S.* 574, 106 *S.Ct.* 1348, 89 *L.Ed.*2d 538 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 106 *S.Ct.* 2505, 91 *L.Ed.*2d 202 (1986), and *Celotex Corp. v. Catrett,* 477 *U.S.* 317, 106 *S.Ct.* 2548, 91 *L.Ed.*2d 265 (1986)). The Court declared the summary judgment determination to be analytically similar to trial courts' determinations of motions under *Rule* 4:37-2 (involuntary dismissal), *Rule* 4:40-1 (directed verdict), and *Rule* 4:40-2 (judgment notwithstanding the verdict). *See Brill, supra,* 142 *N.J.* at 535–36, 666 *A.*2d 146.

> The only distinction ... is that summary judgment motions are generally decided on documentary-type evidential materials, while the directed verdicts are based on evidence presented during a trial. Under our holding today, the essence of the inquiry in each is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
> [*Id.* at 536, 666 *A.*2d 146 (quoting *Liberty Lobby, supra,* 477 *U.S.* at 251–52, 106 *S.Ct.* at 2512, 91 *L.Ed.*2d at 214).]

The *Brill* decision also provided the Court the opportunity to emphasize its intention to encourage trial courts to grant summary judgment in appropriate cases. *Id.* at 541, 666 *A.*2d 146. The Supreme Court made that more available specifically by incorporating into the summary judgment analysis the consideration of the burden of persuasion to be borne at trial. *Id.* at 540, 666 *A.*2d

146. That change makes this court's role a more substantial one than under prior law. *Rule* 4:46-2 was thereafter amended to include what was already the law by virtue of the *Brill* decision. Those amendments include the following language:

An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.

Thus, when trial courts consider opposition to summary judgment motions, they must analyze that opposition in light of the burden of proof to be used at trial. Although a party presenting a bona fide claim should be allowed his or her day in court, it is "just as important that the court not 'allow harassment of an equally deserving suitor for immediate relief by a long and worthless trial.' ... To send a case to trial, knowing that a rational [factfinder] can reach but one conclusion, is indeed 'worthless' and will 'serve no useful purpose.' " *Brill, supra,* 142 *N.J.* at 540–41, 666 *A.*2d 146. "The purpose of summary judgment procedure is, with proper adherence to the rules, to avoid trials which would serve no useful purpose and to afford deserving litigants immediate relief." *Kopp, Inc. v. United Techs., Inc.,* 223 *N.J.Super.* 548, 555, 539 *A.*2d 309 (App.Div.1988) (citing *Judson, supra,* 17 *N.J.* at 74, 110 *A.*2d 24).

A motion for summary judgment will be granted if the opposing allegations, even if true, would not defeat the opposing claim. *Demas v. Nat'l Westminster Bank,* 313 *N.J.Super.* 47, 712 *A.*2d 693 (App.Div.1998), *certif. denied,* 161 *N.J.* 151, 735 *A.*2d 575 (1999) (defense motion should be granted if plaintiff's allegations would not state a cause of action).

## II. Entire Controversy Doctrine

The entire controversy doctrine is a fixture of New Jersey jurisprudence. It has roots in our common law and our 1947 Constitution, and it has been reflected in the New Jersey court rules since at least 1979, when *Rule* 4:27–1(b) required mandatory joinder of all claims against any other party to the action. "The doctrine is a reflection of the constitutional unification of the state

courts and the comprehensive jurisdiction vested in the Superior Court established under our Constitution, which recognized the value in resolving related claims in one adjudication so that 'all matters in controversy between parties may be completely determined.'" *N.J. Const.*, art. VI, § 3, ¶ 4. *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 142 *N.J.* 310, 322, 662 *A.2d* 523 (1995).

Under the entire controversy doctrine, all claims emanating from a transaction, or a related series of transactions, must be joined in a single proceeding. *See Crispin v. Volkswagenwerk, A.G.*, 96 *N.J.* 336, 343–44, 476 *A.2d* 250 (1984). The purposes of the doctrine are to prevent piecemeal or fragmented litigation and to promote comprehensive and final litigation and judicial efficiency. *See* Pressler & Verniero, *Current N.J. Court Rules*, comment on *R.* 4:30A (2016). Claims are required to be joined if they arise out of the same transactional nexus as other claims in the suit. *In Re Estate of Gabrellian*, 372 *N.J.Super.* 432, 444, 859 *A.2d* 700 (App.Div.2004). The doctrine includes the joinder of defenses, *Massari v. Einsiedler*, 6 *N.J.* 303, 312–13, 78 *A.2d* 572 (1951), and all affirmative claims a party might have against another party, including counterclaims and cross-claims, *Ajamian v. Schlanger*, 14 *N.J.* 483, 487–89, 103 *A.2d* 9, *cert. denied*, 348 *U.S.* 835, 75 *S.Ct.* 58, 99 *L.Ed.* 659 (1954). The doctrine applies to successive suits with related claims. *Kaselaan & D'Angelo Assocs. Inc. v. Soffian*, 290 *N.J.Super.* 293, 299, 675 *A.2d* 705 (App.Div.1996). It is "the factual circumstances giving rise to the controversy itself, rather than the commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation." *Mystic Isle, supra*, 142 *N.J.* at 322, 662 *A.2d* 523 (citing *DiTrolio v. Antiles*, 142 *N.J.* 253, 272, 662 *A.2d* 494 (1995)).

However, joinder is not a matter of party autonomy. It is for [the] trial court to determine whether or not joinder is appropriate in a given case, and thus litigants should be compelled to bring all actions at one time. *DiTrolio, supra*, 142 *N.J.* at 275, 662 *A.2d* 494 (citing [*Brown v. Brown*,] 208 *N.J.Super.* 372, 381, 506 *A.2d* 29. A trial court is empowered to segregate different claims to assure manageability, clarity and fairness. *Id.* at 275, 662 *A.2d* 494. A plaintiff who fails to allow the trial court the opportunity to supervise the entire controversy risks losing the right to bring that claim later. *Id.* at 275, 662 *A.2d* 494.

[*Ibid.* (citations modified) ].

*Rule* 4:30A, entitled "Entire Controversy Doctrine" provides as follows:

Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

As is clear from the Rule itself, mortgage foreclosure actions are carved out from the general application of the rule.

### III. Germane Claims

*Rule* 4:64-5, entitled, "Joinder of Claims in Foreclosure" provides:

Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and guarantees. A defendant who chooses to contest the validity, priority or amount of any alleged prior encumbrance shall do so by filing a cross-claim against that encumbrancer, if a co-defendant, and the issues raised by the cross-claim shall be determined upon application for surplus money pursuant to R. 4:64-3, unless the court otherwise directs.

[ (emphasis added.) ]

There is no doubt that the entire controversy doctrine applies to foreclosure proceedings, but only to claims that could have been filed in the foreclosure action, that is, only to claims that were germane to the foreclosure proceeding. The concept of germaneness is relevant to application of the principles of res judicata and collateral estoppel, discussed *infra*, as well as to the entire controversy doctrine.

Plaintiffs argue that their claims here are non-germane, relying in part on *Great Falls Bank v. Pardo*, 263 *N.J.Super.* 388, 622 *A.2d* 1353 (Ch.Div.1993). Although *Pardo* is a trial court decision and therefore not binding precedent, the proposition for which it is cited rests on additional authority. Judge Boyle in *Pardo* stated: "The only material issues in a foreclosure proceeding are the

validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." The court cited *Central Penn National Bank v. Stonebridge, Ltd.*, 185 *N.J.Super.* 289, 302, 448 *A.*2d 498 (Ch.Div.1982), which in turn cited previous cases for its holding:

The issue in a foreclosure proceeding is the validity of the mortgage and the amount of indebtedness due thereon, *Fidelity Union Trust Co. v. Guterl*, 130 *N.J. Eq.* 404, 406, 22 *A.*2d 233 (E. & A.1941); *Montclair Savings Bank v. Sylvester*, 122 *N.J. Eq.* 518, 522, 194 *A.* 811 (E. & A.1937), and to adjudicate the right to foreclosure, namely, to resort to the mortgaged lands for satisfaction of the indebtedness. *Fidelity Union Trust Co. v. Stengel*, 131 *N.J. Eq.* 393, 396–397, 25 *A.*2d 545 (Ch.1942).

This court finds that in order to have granted summary judgment, Judge Escala had to have found that there was a valid mortgage and note, that the Delacruzes were in default of their obligations under that note and mortgage, and that defendant Lynx had the right to foreclose. The order includes the following statement: "The material facts that support [Lynx's] right to foreclose are set forth in the certificate of Arlene Lieberman, portfolio manager for the plaintiff. Those facts are not opposed by defendants." Furthermore, entry of final judgment required a finding of the amount due, which was quantified and included in the judgment.

Defendant Lynx argues that accepting the *Pardo* formulation as correct does not help plaintiffs in this case, arguing that all of plaintiffs' claims against Lynx in this Law Division matter attack the validity of the mortgage, the amount due, or the right of Lynx to foreclose. As such they are, says Lynx, "as germane as germane can get."

All counsel provided the court with citations to unpublished decisions, which of course cannot be cited by the court and are not precedential. *Rule* 1:36-3 provides in part: "No unpublished opinion shall constitute precedent or be binding upon any court. Except for [exceptions not relevant], no unpublished opinion shall be cited by any court." Thus while this court can read, review, consider, and be educated by such unpublished decisions, the court cannot cite them as authority and is not bound by them.

There are only a handful of published New Jersey state court decisions addressing the meaning of the terms "germane" and "non-germane" as they relate to the claims and counterclaims that may be raised in a foreclosure proceeding. That definition is critical to the determination of whether a plaintiff, such as plaintiffs in this case, is subject to the preclusionary effect of the entire controversy doctrine or of res judicata or collateral estoppel. That is, if the claims of plaintiffs could have been brought in the foreclosure action, the entire controversy doctrine bars plaintiffs from bringing them in this separate action. On the other hand, if the claims were not germane to the foreclosure within the meaning of New Jersey law, then they could not have been adjudicated in the foreclosure action, and plaintiffs are not barred from bringing them in this action. Because the published cases are so few, they will be explored in some detail. In addition, the issues have been thoroughly analyzed in federal court cases, applying New Jersey law, to which this Court will also turn for guidance.

An informative discussion of the issue is included in *Sun NLF Ltd. Partnership v. Sasso*, 313 *N.J. Super.* 546, 713 *A.*2d 538 (App.Div.1998). Defendant developer borrowed money from a savings and loan association to finance a development project, in a series of transactions. Through negotiations, the parties reached agreement that Prospect Development Corporation (PDC), a wholly-owned subsidiary of the lender bank, would purchase Phase II of the development for $1.8 million, to be closed after subdivision approvals were obtained. When the approvals were obtained, the mortgagor-defendant demanded that the bank close on the purchase of Phase II, but the bank did not, and a few months later the bank went into receivership. Plaintiff Sun NLF acquired the loan and mortgage as assignee.

In the mortgage foreclosure proceeding, the trial court granted plaintiff's motion for summary judgment and struck down defendant's fraud and breach of contract counterclaims and defenses as non-germane and barred by federal and state law. On appeal, the court reversed the grant of summary judgment. The court ob-

served that the trial court cited the correct, applicable case law, but misapplied it to the facts of the case. "Had the foreclosure action been brought by the bank itself, the claims and defenses arising out of the breach of the September contract would have been properly before the court." *Sun NLF*, *supra*, 313 *N.J.Super.* at 550–51, 713 *A.*2d 538. The court determined defendant had succeeded in raising a question of fact on defenses under federal law, and remanded the matter.

In *Sun NLF*, the court discussed two earlier cases on which it relied. It noted that *Leisure Technology–Northeast, Inc. v. Klingbeil*, 137 *N.J.Super.* 353, 349 *A.*2d 96 (App.Div.1975), held that a defense to foreclosure based on a mortgagee's breach of contract relating to the development of the property is a "germane" counterclaim. *Sun NLF*, *supra*, 313 *N.J.Super.* at 551, 713 *A.*2d 538. In *Leisure Technology* the debtor defendant sought to assert in a foreclosure proceeding that the creditor-plaintiff had breached a contract relating to development of the lands for which the mortgage had been obtained and had engaged in fraud. *Leisure Tech.*, *supra*, 137 *N.J.Super.* at 355–56, 349 *A.*2d 96. The appellate court found that "the thrust of the counterclaim [was] the assertion that plaintiff had breached the underlying Agreement in relation to which the mortgage was executed and interfered with defendants' rights under that Agreement." *Id.* at 358, 349 *A.*2d 96. The Appellate Division found the claim germane and reversed the trial court's decision to sever that claim and to send it to the Law Division. After discussing the single controversy doctrine's roots in our 1947 Constitution and case law since that time, the court concluded the trial judge had taken "too narrow" a reading of the scope of the permissible Chancery litigation in the foreclosure matter. The court reversed, on interlocutory review, the trial court's decision striking defendants' first affirmative defense and severing and transferring the counterclaims to the Law Division.

The use of the word "germane" in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action. We see no intention to prohibit or restrict counterclaims in a more narrow sense.

[*Ibid.* (emphasis added).]

The *Sun NLF* court went on to observe that the entire controversy doctrine could bar assertion of claims and defenses in a subsequent action if they were not raised in the foreclosure action:

> Without doubt a defendant in a foreclosure action may challenge plaintiff's right to foreclose. *See Central Penn Nat'l Bank v. Stonebridge Ltd.*, 185 *N.J.Super.* 289, 302, 448 *A.2d* 498 (Ch.Div.1982). We think it clear that any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure. *See Leisure Technology v. Klingbeil*, 137 *N.J.Super.* 353, 356, 349 *A.2d* 96 (App.Div.1975).

[*Sun NLF, supra*, 313 *N.J.Super.* at 551, 713 *A.2d* 538 (quoting *Joan Ryno, Inc. v. First Nat'l. Bank*, 208 *N.J.Super.* 562, 570, 506 *A.2d* 762 (App.Div.1986)).]

In *Joan Ryno, Inc.*, the debtor-plaintiff sued the creditor-defendant for losses due to a foreclosure proceeding. *Joan Ryno, Inc., supra*, 208 *N.J.Super.* at 564, 567, 506 *A.2d* 762. The debtor had purchased a large plot of land which it had subdivided, with the intention to build two houses, one as a personal home for its officers and one to resell. *Id.* at 564, 506 *A.2d* 762. The debtor received commitments from the creditor for loans to build both the personal residence and the resale home. *Id.* at 564–65, 506 *A.2d* 762. After the creditor refused to lend the debtor the money for the resale home, the debtor was forced to find other financing. *Id.* at 566, 506 *A.2d* 762. The debtor eventually defaulted on the personal residence loan, blaming the default on the creditor's breach of the loan commitment for the resale home. *Id.* at 568, 506 *A.2d* 762. The creditor foreclosed on the mortgage, securing a default judgment. The debtor thereafter sued the creditor for breach of contract, claiming the creditor's breach of the commitment agreement resulted in damages from the loss of the personal residence by foreclosure. *Ibid.* The *Joan Ryno, Inc.* court held that the action was barred by the single controversy doctrine. In so ruling, the court reasoned:

> While we have difficulty considering the breach of the commitment was germane in the foreclosure action, nevertheless under plaintiff's premise that the losses from the foreclosure are recoverable in this case, it was germane. Further, assuming that substantively plaintiff's damage claim is valid, it cannot be doubted but that if

the breach of the commitment gave plaintiff a defense to the foreclosure, then it was germane for that reason as well. Thus we conclude that if we are to accept plaintiff's legal claim that it may obtain substantive damages by reason of the foreclosure, it is barred by the single controversy doctrine from making the recovery.

[*Id.* at 570, 506 *A.*2d 762.]

In *Associates Home Equity Services, Inc. v. Troup*, 343 *N.J.Super.* 254, 778 *A.*2d 529 (App.Div.2001), the court considered whether claims by defendant debtors could be raised in a foreclosure proceeding. Although the claims were time-barred as affirmative claims, they would afford an equitable recoupment defense if permitted, reducing the amount defendants might owe. *Id.* at 264, 271, 778 *A.*2d 529. Defendants had borrowed money for home improvements, solicited and arranged by the home improvement company. *Id.* at 263–64, 778 *A.*2d 529. In response to the foreclosure complaint, defendants filed a counterclaim against the plaintiff assignee of the loan and a third-party complaint against the home improvement company and the original lender, claiming violations of the Consumer Fraud Act (CFA), *N.J.S.A.* 56:8–1 to –106, the Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –49, the Fair Housing Act (FHA), 42 *U.S.C.A.* §§ 3601 to 3631, the Civil Rights Act (CRA), 42 *U.S.C.A.* § 1981, and the Truth-In-Lending Act (TILA), 15 *U.S.C.A.* § 1635.

The court held that a foreclosure action is not strictly an in rem proceeding against the property, but is rather a quasi in rem proceeding, determining not only the right to foreclose but also the amount due on the mortgage. *Assocs. Home Equity, supra,* 343 *N.J.Super.* at 272, 778 *A.*2d 529. The defendants' claims against the plaintiff assignee of the loan and mortgage were reinstated by reversal of the trial court's order granting summary judgment. *Id.* at 277–80, 778 *A.*2d 529 (claims against the other defendants were also reinstated, but the analysis did not address the issue of germaneness).

The Third Circuit held a borrower's claims related to alleged overcharges of attorney's costs and fees in a mortgage reinstatement quote were barred by New Jersey's entire controversy

doctrine, because the borrower's causes of action arose out of and were germane to a foreclosure action filed by the lender in state court and dismissed after the borrower paid the reinstatement amount. *Coleman v. Chase Home Fin., LLC*, 446 *Fed.Appx.* 469 (3d Cir.2011).

A thorough discussion and analysis were provided by United States Bankruptcy Judge Rosemary Gambardella in *Lewison Brothers v. Washington Savings Bank*, 162 *B.R.* 974 (B.R.N.J. 1993). The case arose in the context of an adversary proceeding in the United States Bankruptcy Court for the District of New Jersey. The plaintiffs in that proceeding were a debtor partnership and two individual persons, asserting lender liability claims in fraud and breach of contract against the lender who had successfully foreclosed on a mortgage in state court. *Id.* at 979. The facts are as follows. On June 17, 1988, the debtor Partnership mortgaged real property located at 125 Monitor Street, Jersey City, New Jersey (the "Property") to Washington Savings Bank. *Id.* at 977. The Partnership subsequently defaulted on its $2,500,000 obligation to Washington, and, on or about September 8, 1988, Washington commenced a foreclosure action against the Property in New Jersey state court. *Ibid.*

The foreclosure answer of the defendants, the Partnership, and Paul Lewison, was stricken for failure to plead a valid defense. *Ibid.* The defendants did not file a motion to amend their answer in the state foreclosure action, and a final judgment of foreclosure was entered. *Ibid.* Thereafter they appealed and also sought to reopen the foreclosure action to amend their pleadings. *Ibid.*

The Appellate Division remanded the matter for the trial judge to resolve, but apparently the defendants did not pursue either their motion or their appeal in state court. *Ibid.* The appeal was eventually dismissed administratively, and a sheriff's sale of the property was scheduled, after adjournments, for August 31, 1989, at which point the Partnership filed a petition in bankruptcy, which triggered the automatic stay, causing a stay of the sale. *Id.* at 977–78. The stay was lifted on July 25, 1991. *Id.* at 978. The

Property was subsequently sold, and Washington was the buyer. *Ibid.*

Debtors filed, as plaintiffs under the bankruptcy proceeding, a complaint containing information identical to that included in the proposed amended complaint they had submitted to the state court. *Ibid.* Washington, as defendant in the adversary proceeding, sought to dismiss it. *Id.* at 979.

The court provided extensive analysis of issues unique to application of issue preclusion doctrines (res judicata and collateral estoppel) in bankruptcy court, and then turned to the issue of whether New Jersey's entire controversy doctrine would apply, specifically reviewing the case law on the issue of what constitutes "germane" claims or counterclaims. *See generally id.* at 985–87. Judge Gambardella discussed the evolution of the entire controversy doctrine and revisions to the Rules of Court that it spawned. *Ibid.* She quoted the *Leisure Technology–Northeast* decision: "'The use of the word "germane" in the language of the Rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action.'" *Lewison Bros, supra,* 162 *B.R.* at 987 (citing *Leisure Tech., supra,* 137 *N.J.Super.* at 358, 349 *A.2d* 96). After discussing both *Leisure Technology* and *Joan Ryno, Inc., supra,* 208 *N.J.Super.* at 562, 506 *A.2d* 762, the bankruptcy court concluded the debtors' claims were germane to the foreclosure and therefore they were barred by the entire controversy doctrine. *Id.* at 987.

Plaintiff relies heavily on the case of *Family First Federal Savings Bank v. DeVincentis,* 284 *N.J.Super.* 503, 665 *A.2d* 1119 (App.Div.1995). Defendant Phyllis DeVincentis mortgaged a vacant lot she owned in Beach Haven as security for a loan to provide money for a business venture for her son, Philip DeVincentis. *Id.* at 506, 665 *A.2d* 1119. The loan went into default, and the plaintiff brought a foreclosure action. *Ibid.* After default judgment was entered, Phyllis DeVincentis succeeded in vacating the default judgment as to her, based on faulty service of process.

*Id.* at 507, 665 *A*.2d 1119. She filed an answer raising a number of affirmative defenses, arguing the mortgage was unenforceable and/or invalid for a number of reasons. *Ibid.* The trial judge held none of the asserted defenses was sufficient to defeat foreclosure and granted summary judgment to plaintiff. *Ibid.* On appeal the court held the Truth in Lending Act was not applicable and concluded that whatever claims the defendant might have against her son or his business partners did not affect the validity of the mortgage. *Id.* at 508–09, 665 *A*.2d 1119. That is, any fraud, duress, undue influence, or other improper dealing by those parties was not chargeable to the bank/lender. *Id.* at 509, 665 *A*.2d 1119.

After explaining the reason for its decision, the court addressed what it called "procedural anomalies" in the case. *Id.* at 510, 665 *A*.2d 1119. When the defendant raised her claims in the foreclosure proceeding, the plaintiff bank filed a third-party complaint (rather than a motion to amend its complaint), raising claims against the persons named by the defendant and against the title insurance company. *Ibid.* At the same time, while the foreclosure proceeding was pending in Ocean County, the bank filed suit in Passaic County on the note, naming the same parties. *Id.* at 511, 665 *A*.2d 1119. The court noted that the prohibition against nongermane claims in *Rule* 4:64-5, which expressly includes claims on the instrument of obligation, is what required plaintiff to file the separate action in Passaic County to collect on the note. *Id.* at 512, 665 *A*.2d 1119. The pleadings in Passaic County mirrored the pleadings in Ocean County, because Phyllis DeVincentis raised the same defenses to the collection action that she raised to the foreclosure. *Ibid.* The court did *not* hold that Phyllis DeVincentis could not raise those defenses in the foreclosure action, but only that her doing so would not justify bringing those other parties into the foreclosure proceeding as defendants, because the bank's rights against them would not affect the validity or invalidity of the mortgage. *Ibid.* The court noted that all of the remaining claims of the parties could be addressed in the pending Law Division matter. *Ibid.*

These comments were not related to the issues presented on appeal or to the court's holding. They do not support plaintiffs' claim that they should be permitted to proceed against Lynx in the current action. Plaintiffs argue they are not challenging the foreclosure judgment, but are seeking damages against Lynx for conduct in the mortgage loan transaction that was the subject of the foreclosure action and judgment. As to Lynx, plaintiffs asserted affirmative defenses that raised many of the claims they now assert, and there are no claims raised that could not have been raised in the foreclosure proceeding. For these reasons, defendant Lynx's motion for summary judgment is granted on the grounds that plaintiffs' claims are barred by the entire controversy doctrine.

Defendants GEMB and WMC were not parties to the foreclosure action. They argue that the claims plaintiffs bring against them now should have been brought in the foreclosure action. As noted above, the entire controversy doctrine no longer includes a mandatory party joinder component, but the rules of court require parties to list parties who might be liable to any party on the basis of the same transactional facts, which is intended to allow joinder. That is, pursuant to *Rule* 4:29-1(b), the court can order joinder of persons whose identities are properly disclosed by either party in its *Rule* 4:5-1 mandatory disclosure.

The court is not persuaded that the entire controversy doctrine standing alone would require dismissal of plaintiffs' claims against defendants who were not joined as parties in the foreclosure action. Clearly, the better course of action for plaintiffs would have been to join all parties and claims when they filed their answer, allowing the court to make the determination at that time of whether the claims were germane. Because all the claims now raised by plaintiffs go to the validity and enforceability of the mortgage and note, they should have been raised as to all parties in the single action.

## IV. Res Judicata

Res judicata is generally described as the common-law doctrine barring re-litigation of claims that have already been adjudicated,

distinguishing it from the common-law doctrine of collateral estoppel, which is generally understood to bar relitigation of <u>issues</u> that have already been adjudicated. *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 190 *N.J.* 342, 352, 921 *A.*2d 417 (2007).

For res judicata to apply:

(1) the judgment in the prior action must be valid, final, and on the merits;

(2) the parties in the later action must be identical to or in privity with those in the prior action; and

(3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

[*Watkins v. Resorts Int'l Hotel & Casino*, 124 *N.J.* 398, 412, 591 *A.*2d 592 (1991).]

The doctrine applies when "the judgment relied upon [is] valid, final and on the merits; the parties in the two actions [are] either identical or in privity with one another; and the claims [grew] out of the same transaction or occurrence." *Olds v. Donnelly*, 291 *N.J.Super.* 222, 232, 677 *A.*2d 238 (App.Div.1996), *aff'd*, 150 *N.J.* 424, 696 *A.*2d 633 (1997) (emphasis added).

"Res judicata, like the entire controversy doctrine, serves the purpose of providing 'finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness[.]'" *Wadeer v. New Jersey Mfrs. Ins. Co.*, 220 *N.J.* 591, 606, 110 *A.*3d 19 (2015) (citing *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, *supra*, 190 *N.J.* 342, 352, 921 *A.*2d 417 (2007) (quoting *Hackensack v. Winner*, 82 *N.J.* 1, 32–33, 410 *A.*2d 1146 (1980))).

Claims are considered resolved by final judgment for res judicata purposes if they are pleaded and disposed of by the court. *Velasquez v. Franz*, 123 *N.J.* 498, 506, 589 *A.*2d 143 (1991) (quoting *Restatement (Second) of Judgments*, § 27 comment d (1982)). A trial on the merits of an issue is not necessary for preclusion. *Id.* at 506–07, 589 *A.*2d 143 (involuntary dismissal or dismissal with prejudice constitutes an adjudication on the merits "as fully and completely as if the order had been entered after trial") (citing *Gambocz v. Yelencsics*, 468 *F.*2d 837 (3d Cir.1972)

(citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 *U.S.* 322, 327, 75 *S.Ct.* 865, 868, 99 *L.Ed.* 1122, 1127 (1955) (dismissal of complaint with prejudice bars subsequent suit on same issue, where operative facts of subsequent suit were identical.)))

Defendant Lynx argues that if the entire controversy doctrine does not bar plaintiffs' claims here on the basis that they should have been litigated in the foreclosure action, then logically res judicata must apply, to the extent the claims were raised by plaintiffs in their affirmative defenses and counterclaim (responding to an argument by plaintiffs that they should not be barred by the entire controversy doctrine because they did raise these issues in the foreclosure proceeding). Lynx argues the same claims are re-cloaked as the breach of contract and fraud claims in this matter, but are premised on the identical facts on which the Delacruzes relied in the foreclosure action.

Plaintiffs repeat the argument that they were restricted in the claims they could bring in the foreclosure action, which the court finds unpersuasive. Claims or defenses that went to the validity of the mortgage, the amount due, or the right of Lynx to foreclose had to be raised in the foreclosure proceeding or they were barred. Plaintiffs abandoned pursuit of their claims after filing a contesting answer,[2] and they are bound by the final judgment entered.

Because defendants GEMB and WMC are considered to be "in privity" with Lynx, satisfying the second prong of the res judicata analysis, they also are entitled to dismissal based on res judicata. "An assignee of a right will be considered to be in privity with its assignor." *Brookshire Equities, LLC v. Montaquiza*, 346 *N.J.Super.* 310, 319, 787 *A.2d* 942 (App.Div.2002). Thus, GEMB

---

[2] At oral argument plaintiffs' counsel alluded to a letter of opposition that he said was submitted to the foreclosure judge (Judge Escala) and was considered as a "sort of" motion for reconsideration. No party provided to the court any further information about that, nor a copy of any papers filed regarding the summary judgment, nor a transcript of the proceeding in which Judge Escala may have considered or discussed any such filing.

and WMC are entitled to summary judgment by virtue of res judicata.

The concept of privity as it affects res judicata seems to arise more often when a person who was not a party to the earlier action seeks to avoid the bar by claiming it was not in privity with the party to the prior action. However, in *Brookshire*, unsuccessful defendants in a foreclosure action thereafter sought to file suit against the assignee of the foreclosing lender, to impose a constructive trust or to have the property transferred back to them. *Id.* at 313, 318, 787 *A.*2d 942. The claims were held to be barred. *Id.* at 319–20, 787 *A.*2d 942. In this case plaintiffs' claims are, comparably, barred as to the assignor.

## V. Collateral Estoppel

We come now to the last of the preclusionary doctrines raised by defendants. "The doctrine of collateral estoppel precludes the relitigation of issues, whereas res judicata precludes relitigation of judgments." *Brae Assocs. v. Park Ridge Borough,* 17 *N.J.Tax* 187, 193 (Tax 1998) (citing *Mazzilli v. Accident & Cas. Ins. Co.,* 26 *N.J.* 307, 139 *A.*2d 741 (1958) and *Allesandra v. Gross,* 187 *N.J.Super.* 96, 453 *A.*2d 904 (App.Div.1982)).

For the doctrine of collateral estoppel to apply to foreclose the re-litigation of an issue, the party asserting the bar must show that:

(1) the issue to be precluded is identical to the issue decided in the prior proceeding;

(2) the issue was actually litigated in the prior proceeding;

(3) the court in the prior proceeding issued a final judgment on the merits;

(4) the determination of the issue was essential to the prior judgment; and

(5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[*In Re Estate of Dawson,* 136 *N.J.* 1, 20–21, 641 *A.*2d 1026 (1994).]

Defendants argue that the factual allegations set forth in plaintiffs' complaint were known to plaintiffs at the time of the foreclosure action and were the basis for their counterclaim and affirmative defenses in that action, making the issues identical. Plaintiffs

admit they knew the operative facts at the time they defended against the foreclosure complaint.

Plaintiffs argue that the trial court in the foreclosure proceeding did not make findings, arguing the issues were not "actually litigated." To the extent the issues could have been more extensively litigated in the prior proceeding, the absence of such litigation is the product of choices made by plaintiffs. This court finds that defendants are correct in their argument that all of the claims made by plaintiffs here were raised by way of their defenses and counterclaim. Judgment was not entered by default. Plaintiffs, as defendants in the foreclosure proceeding, filed a contesting answer raising and presenting all these claims. As discussed in the res judicata section of this decision, an issue need not be resolved by actual trial in order to be final for preclusion purposes.

The court is not persuaded by plaintiffs' contention that if they had gone forward with their claims and litigated their defenses aggressively, those portions of the case might have been transferred to the Law Division. The Chancery Division judge hearing the foreclosure case could have done that only if he determined those claims and defenses were not germane. To the extent plaintiffs' claims challenged the validity of the mortgage on which Lynx foreclosed, they were necessarily decided in the foreclosure action prior to entry of the final judgment. Accordingly, this court finds that defendants have established factors one through four under the *Dawson* test. As to the fifth factor, plaintiffs are the party against whom the collateral estoppel doctrine is being asserted and they were the parties-defendants in the prior proceeding. Accordingly, defendants GEMB and WMC are entitled to summary judgment under the doctrine of collateral estoppel.

## CONCLUSION

For the foregoing reasons, summary judgment is granted to defendants Lynx and GE/WMC.