NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2386
_____

KIMBERLY SHIBLES,
                              Appellant

v.

BANK OF AMERICA, N.A.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 1-16-cv-4357)
District Judge:  Honorable Renee Marie Bumb
_____

Submitted Under Third Circuit LAR 34.1(a)
March 14, 2018

Before:  JORDAN, SHWARTZ, and KRAUSE, *Circuit Judges*

(Filed: March 23, 2018)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Kimberly Shibles appeals from the District Court's dismissal of her first amended complaint, which brought state law fraud and breach of contract claims against Bank of America, N.A. (the "Bank"). Shibles's claims arose out of the Bank's denial of her request for a permanent loan modification pursuant to the Home Affordable Modification Program ("HAMP").[1] Because we agree with the District Court that New Jersey's entire controversy doctrine precludes the claims, we will affirm.

## I. BACKGROUND[2]

Shibles carried a mortgage on a New Jersey property she purchased in 2004. When she refinanced that mortgage in 2007, she "executed a promissory note and mortgage" that was later sold to the Bank. (App. at 39.) As a result, the Bank became Shibles's mortgage loan servicer.

After experiencing financial difficulty in "2009 due to a loss of income," Shibles informed the Bank that "she might default soon if she could not obtain loss mitigation assistance." (App. at 39-40.) That prompted the Bank to send Shibles a Trial Modification Contract (the "TMC"). The cover letter to the TMC stated that, if Shibles complied with the terms of the TMC, she would receive a Home Affordable Modification Agreement "that would amend and supplement" her mortgage. (App. at 40.) Those

---

[1] HAMP is a program run by the United States Department of the Treasury "designed to prevent foreclosures by encouraging loan servicers to modify mortgage terms for eligible homeowners." *Herron v. Fannie Mae*, 861 F.3d 160, 164 (D.C. Cir. 2017).

[2] The facts described here are derived from Shibles's first amended complaint. We view those allegations in the light most favorable to her. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

terms included making a reduced monthly mortgage payment for a "three-month trial period" and documenting the financial hardship causing her to have difficulty meeting the loan's monthly payment obligations. (App. at 40.) In February 2010, Shibles signed the TMC and returned it to the Bank along with supporting documentation explaining her financial hardship.

The TMC required Shibles to make reduced monthly mortgage payments in April, May, and June 2010, which she did. She also subsequently made reduced monthly mortgage payments in July and August 2010, as she waited for the Bank to provide her with a permanent loan modification contract. Instead of receiving a permanent modification contract, however, Shibles received a letter from the Bank titled "NOTICE OF INTENTION TO FORECLOSE." (App. at 42.) The letter stated that her loan was in default because "the required payments [had] not been made." (App. at 43.) Shibles, however, had not defaulted on the loan as of August 2010. She continued making reduced mortgage payments for the next four months.

Despite making the reduced monthly payments required by the TMC, the Bank sent Shibles a letter in December 2010 informing her that her request for a loan modification under HAMP was denied because she had "not documented a financial hardship that ha[d] reduced [her] income or increased [her] expenses, thereby impacting [her] ability to pay [her] mortgage as agreed." (App. at 44.) Shibles alleges that the Bank's denial of her loan modification request "was premised on false assertions" because she had, in fact, provided the required documentation regarding her financial hardship. (App. at 44.)

The Bank commenced foreclosure proceedings against Shibles in New Jersey state court in October 2013. The following March, the Bank obtained a default judgment against Shibles for $273,587.51. One year later, the property subject to the mortgage was sold at a sheriff sale, and, after another year passed, in the spring of 2016, she was evicted.

Shibles initiated this federal action in July 2016. The Bank moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6), arguing that the District Court lacked subject matter jurisdiction pursuant to the *Rooker-Feldman* Doctrine and that the amended complaint failed to state a claim because it was barred both by New Jersey's entire controversy doctrine and by res judicata. The District Court agreed that the *Rooker-Feldman* Doctrine deprived it of subject matter jurisdiction, reasoning that granting Shibles relief on her state law fraud and breach of contract claims would necessarily entail reviewing and rejecting the New Jersey state court's foreclosure action. It ruled, in the alternative that, because Shibles could have brought the claims at issue in the underlying state court foreclosure action, New Jersey's entire controversy doctrine barred her from bringing those claims in a subsequent proceeding.[3]

---

[3] The District Court did not address the Bank's res judicata argument because it rested its holding on the *Rooker-Feldman* and entire controversy doctrines. Because we will affirm the Court's dismissal on entire controversy grounds, we also do not reach the Bank's res judicata argument.

## II.    DISCUSSION[4]

### A.    The *Rooker-Feldman* Doctrine

"Under [Rule] 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Because the Bank does not challenge any of the factual allegations in the amended complaint, its jurisdictional attack is properly understood as a facial challenge. *Id.* When reviewing a facial challenge to subject matter jurisdiction, we "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citation omitted).

The *Rooker-Feldman* Doctrine "is a 'narrow doctrine' that 'applies only in limited circumstances.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 169 (3d Cir. 2010) (quoting *Lance v. Dennis*, 546 U.S. 459, 464-66 (2006)). The doctrine "is confined to … cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This case does not present one of

---

[4]    The parties dispute whether the District Court had subject matter jurisdiction. Shibles's amended complaint alleged diversity of citizenship jurisdiction under 28 U.S.C. § 1332. The Bank contends that the District Court lacked subject matter jurisdiction pursuant to the *Rooker-Feldman* Doctrine. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) or (b)(6). *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

those limited circumstances because the injuries Shibles alleges – namely that she was harmed by the Bank's breach of the TMC and by its fraudulent dealings with her – arise not from the state court foreclosure judgment, but from the Bank's actions.

We have explained that "when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court[.]" *Great W. Mining*, 615 F.3d at 167. In other words, before *Rooker-Feldman* operates to bar a plaintiff from bringing suit in federal court, a federal court must determine that the injury alleged was "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* (citation omitted). Shibles does not complain that she was harmed by the state court's decision in the foreclosure action; she complains she was harmed by the Bank's actions that resulted in the state foreclosure action. Although we agree with the District Court that finding in favor of Shibles here would necessarily entail reviewing the state foreclosure judgment and acknowledging what might have been a meritorious defense, that is not determinative. "[D]eny[ing] a legal conclusion reached by the state court" is not alone sufficient to invoke *Rooker-Feldman*. *Id.* Here, the state court foreclosure judgment simply "acquiesced in, or left unpunished," the conduct Shibles alleges in her amended complaint. *Id.* Accordingly, the *Rooker-Feldman* Doctrine does not deprive us of subject matter jurisdiction.

### B. New Jersey's Entire Controversy Doctrine

"To survive a motion to dismiss [brought under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

6

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). The District Court concluded that Shibles's amended complaint failed to state a claim for which relief could be granted because New Jersey's entire controversy doctrine barred each asserted claim. We agree.

New Jersey's entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015) (citation omitted). We have characterized the doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015) (citation omitted). The doctrine "applies in federal courts when there was a previous state-court action involving the same transaction[.]" *Id.* (quotation marks and citation omitted).

"There is no doubt that the entire controversy doctrine applies to foreclosure proceedings, but only to claims that could have been filed in the foreclosure action, that is, only to claims that were germane to the foreclosure proceeding." *Delacruz v. Alfieri*, 145 A.3d 695, 701 (N.J. Super. Ct. Law Div. 2015) (emphasis omitted).[5] The New

---

[5] "Germane" claims include claims that "attack the validity of the mortgage, the amount due, or the right of the [lender] to foreclose." *Delacruz*, 145 A.3d at 702; *see also Adelman v. BSI Fin. Servs., Inc.*, --- A.3d ---, 2018 WL 636756, at *1 (N.J. Super. Ct. App. Div. Jan. 31, 2018) (treating as "germane" state law fraud and breach of contract claims identical to those Shibles brought here). Shibles does not dispute that the claims

7

Jersey Superior Court, Appellate Division recently re-affirmed that basic tenant of state law, explaining that "[a] defendant in a foreclosure case may not fail to diligently pursue a germane defense and then pursue a civil case against the lender alleging fraud by foreclosure." *Adelman v. BSI Fin. Servs., Inc.*, --- A.3d ---, 2018 WL 636756, at \*1 (N.J. Super. Ct. App. Div. Jan. 31, 2018). Shibles could have brought her state law fraud and breach of contract claims in the underlying foreclosure action. She did not. Accordingly, the District Court rightly dismissed Shibles's amended complaint pursuant to the entire controversy doctrine.[6]

## III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's order granting the Bank's motion to dismiss.

---

she has brought in this lawsuit are germane claims that could have been brought in the underlying foreclosure action.

[6] Shibles urges us to find, based on an unpublished New Jersey Superior Court, Appellate Division opinion, *Genid v. J.P. Morgan Chase*, No. L-1192-14, 2016 WL 7190033 (N.J. Super. Ct. App. Div. Dec. 12, 2016), that foreclosure defendants can, in a subsequent civil litigation, bring claims that they could have brought in a prior foreclosure proceeding but chose not to. *See id.* at \*4 (concluding "that requiring every possible germane counterclaim [to] be raised as part of foreclosure actions is not consistent with the entire controversy doctrine's purpose"). We decline to do so. Published decisions from the New Jersey Superior Court, both before and after *Genid*, are clear: the entire controversy doctrine bars germane claims, counterclaims, and defenses that could have been brought in a prior foreclosure proceeding. *Adelman, Inc.*, --- A.3d ---, 2018 WL 636756, at \*1; *Delacruz*, 145 A.3d at 701-02. Those cases are more persuasive than *Genid* and lead us to predict that the New Jersey Supreme Court would adopt the reasoning in them. *See Jaworowski v. Ciasulli*, 490 F.3d 331, 335 (3d Cir. 2007) ("[W]hen sitting in diversity our role is to predict how a state's highest court would rule if a particular issue came before it.").

8